In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 05-3465

BADIATU TUNIS,

*Petitioner*,

*v.*

ALBERTO R. GONZALES,

*Respondent.*

———————

On Petition for Review of an Order of the
Board of Immigration Appeals.
No. A77-603-197.

———————

ARGUED MARCH 28, 2006—DECIDED MAY 15, 2006

———————

Before POSNER, EASTERBROOK, and WILLIAMS, *Circuit Judges*.

POSNER, *Circuit Judge*. Badiatu Tunis, a native of Sierra Leone who became a permanent resident of the United States, was ordered removed (deported) on the basis of her conviction in a Wisconsin state court of two counts of selling a small amount of cocaine (less than a gram). These were felonies for which the court sentenced her to two years in prison plus two years of "extended supervision" but suspended all but seven months of the prison term. Were it not for the classification by the immigration judge, seconded by the Board of Immigration Appeals, of her offense as a

"particularly serious crime," she would be eligible for asylum and alternatively for withholding of removal. She challenges the classification, together with the denial of relief under the Convention Against Torture.

A drug offense, state or federal, that would be a felony under federal law, as Tunis's would be, is an "aggravated felony" for purposes of immigration law and bars the relief sought (other than under the Convention). *Gonzales-Gomez v. Achim*, 441 F.3d 532, 533 (7th Cir. 2006). But if the prison sentence is shorter than five years, the Attorney General has discretion to rule that the alien's "aggravated felony" is not a "particularly serious crime" and hence does not bar that relief. 8 U.S.C. § 1231(b)(3)(B)(ii). The statute provides no guidance to his exercise of that discretion, but in *In re Y-L*, 23 I. & N. Dec. 270, 276-77 (BIA 2002), he stated that the "unusual circumstances"

> would need to include, at a minimum: (1) a very small quantity of controlled substance; (2) a very modest amount of money paid for the drugs in the offending transaction; (3) merely peripheral involvement by the alien in the criminal activity, transaction, or conspiracy; (4) the absence of any violence or threat of violence, implicit or otherwise, associated with the offense; (5) the absence of any organized crime or terrorist organization involvement, direct or indirect, in relation to the offending activity; and (6) the absence of any adverse or harmful effect of the activity or transaction on juveniles. Only if all of these criteria were demonstrated by an alien would it be appropriate to consider whether other, more unusual circumstances (e.g., the prospective distribution was solely for social purposes, rather than for profit) might justify departure from the default interpretation that drug trafficking felonies are "partic-

ularly serious crimes." I emphasize here that such commonplace circumstances as cooperation with law enforcement authorities, limited criminal histories, downward departures at sentencing, and post-arrest (let alone post-conviction) claims of contrition or innocence do not justify such a deviation.

The courts have (with an immaterial exception) no jurisdiction to review discretionary determinations by the Attorney General concerning immigration, 8 U.S.C. § 1252(a)(2)(B)(ii), including determinations under 8 U.S.C. § 1231(b)(3)(B)(ii), *Afridi v. Gonzales*, 442 F.3d 1212, 1218 (9th Cir. 2006); *Unuakhaulu v. Gonzales*, 416 F.3d 931, 935 (9th Cir. 2005), except to consider "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D); *Cevilla v. Gonzales*, No. 05-2387, 2006 WL 1133148, at *1-3 (7th Cir. May 1, 2006). Neither the constitutionality of the informal regulation promulgated in *In re Y-L* nor the authority of the Attorney General to formulate criteria for the exercise of the discretion granted to him by section 1231(b)(3)(B)(ii) is questioned. And if Tunis met the six listed criteria but failed to persuade the Board that "other, more unusual circumstances (e.g., the prospective distribution was solely for social purposes, rather than for profit) might justify departure from the default interpretation that drug trafficking felonies are 'particularly serious crimes,' " we would have no jurisdiction to review the Attorney General's ruling unless in making it he managed somehow to violate the Constitution, as by basing denial on a forbidden ground such as race or sex.

Still, the immigration judge committed a mistake of law when he ruled that Tunis could not satisfy criterion (4)—"the absence of any violence or threat of violence, implicit or otherwise, associated with the offense"—on the

ground that *all* drug transactions involve an "inherent risk of violence." If "all" drug transactions flunk criterion (4), there can be no drug offense that is not "a particularly serious crime," which is contrary to *In re Y-L*. But this mistake cannot save the day for Tunis. An alien must satisfy all six criteria to reach the threshold for consideration and number (3) is that his or her involvement "in the criminal activity, *transaction*, or conspiracy" have been "merely peripheral" (emphasis added). Tunis was the seller in the two drug transactions. The seller cannot be a peripheral figure in a transaction—the person who drove the seller to the place of sale, or supplied the seller with a Ziploc bag in which to place the drugs, perhaps; but not the seller or the buyer. Compare *United States v. Valles*, 41 F.3d 355, 358-59 (7th Cir. 1994); *Bellavia v. Fogg*, 613 F.2d 369, 378 (2d Cir. 1979).

That leaves for consideration Tunis's claim for relief under the Convention Against Torture. She must prove that it is more likely than not that if returned to Sierra Leone she will be tortured. 8 C.F.R. § 208.16(c)(2); *Mabasa v. Gonzales*, 440 F.3d 902, 907-08 (7th Cir. 2006). Her claim is based on the procedure (really procedure*s*—and that will become important in our analysis but can be ignored for the moment) that used to be called "female circumcision" or "clitoridectomy and infibulation" but is now more commonly referred to, in places where it is not an acceptable practice, as "female genital mutilation" (FGM). It is well-nigh universal in Sierra Leone, where it is not illegal, and is performed not by doctors but by members of women's secret societies. Tunis underwent it when she was 10 years old, but later, when she first had sexual intercourse, her sexual partner complained that she was only a "half-woman", which was taken to mean that the procedure had been somehow incomplete. Tunis fears that if she is re-

turned to Sierra Leone she will be forced to undergo the procedure again. She claims without contradiction that she does not want this to happen, and we have held that forcibly subjecting a girl or woman to the procedure is torture. *Oforji v. Ashcroft*, 354 F.3d 609, 615 n. 2 (7th Cir. 2003); *Nwaokolo v. INS*, 314 F.3d 303, 308-09 (7th Cir. 2002) (per curiam); see also *Mohammed v. Gonzales*, 400 F.3d 785, 802 (9th Cir. 2005).

The government argues that Tunis's fears are chimerical. It points out that most females in Sierra Leone are subjected only to clitoridectomy—more precisely, to "excision," which is "the removal 'of the clitoris together with part or all of the labia minora,'" *Abay v. Ashcroft*, 368 F.3d 634, 638 n. 1 (6th Cir. 2004) (quoting a Department of State study)—and not to infibulation as well, which is "stitching or narrowing [as by rings] of the vaginal opening, leaving a very small opening, about the size of a matchstick, to allow for the flow of urine and menstrual blood." *Id*. So even if Tunis just underwent excision the first time, she need have little fear of being forced to undergo infibulation. But this misses the point. As far as the record reveals, she had a botched procedure when she was 10 years old, as a result of which her excision was only partial. This exposes her to the risk of being forced (should she be returned to Sierra Leone) to repeat the excision, and we have held that involuntary excision, even if unaccompanied by infibulation, is torture. *Nwaokolo v. INS*, *supra*, 314 F.3d at 308-09; see also *Mohammed v. Gonzales*, *supra*, 400 F.3d at 795 n. 12.

At argument, the government's lawyer pointed out that notes of a pelvic exam of Tunis imply that she is infibulated. This seems mistaken, since the notes include a hand-drawn picture of her pelvic area that clearly shows an entirely open vagina. More important, the statement in the notes that

mentions infibulation supports the hypothesis of an incomplete excision: "Clitoris—absent. s/p anterior infibulation. . . . Labia—*present* posteriorly, absent anteriorly" (emphasis added). That is, Tunis's labia have not been entirely removed, and the labia that remain may have been what gave rise to the "half-woman" comment.

The examining doctor may have thought infibulation a generic term for clitoridectomy and infibulation—as did the immigration judge, who said "there is one procedure I believe and the one procedure involves infibulation, I believe that's the term, for everything. *It is infibulation where all of the female genitalia is removed*. But that's only 15 percent of [women in Sierra Leone]" (emphasis added).

Infibulation is neither here nor there, as far as the present case is concerned. Tunis's argument is that the excision, a separate procedure, was incomplete.

Besides assuming that Tunis had undergone a complete excision and that the "half-woman" comment, if it had been made at all, was a reference to her not having undergone infibulation as well, the immigration judge refused to credit the comment, on the ground that it was "quadruple hearsay." Tunis, he said, had "testified in a general manner that a male friend had related this to her sister who related this to her mother who related this to" Tunis. What Tunis actually testified was that people from the village had taunted her about the incomplete procedure; that a member of the secret society had told her mother that the members realized they'd "never finished what they did" and would have "to complete what they started"; and that the "half-woman" comment had been made directly to her. *That* testimony was not hearsay; she was testifying to what she had heard, not to the truth of the statement. Likewise her testimony about taunts made to her. And although

the statement by her mother was hearsay, immigration judges, like other administrative adjudicators, are not bound by the rules of evidence. *Niam v. Ashcroft*, 354 F.3d 652, 658-59 (7th Cir. 2004).

The judge also ruled that the government of Sierra Leone does not direct or acquiesce in female circumcision, and without such acquiescence the Convention Against Torture cannot provide any protection to Tunis. The procedure is performed by the secret societies, which are private groups, and the judge said that "the government is not responsible for individuals whom it is unable to control." True, but irrelevant: Female circumcision is legal in Sierra Leone, obviously well known to the government, and, considering the strong international condemnation of the practice, condoned and thus acquiesced in by the government, therefore entitling Tunis to the Convention's protection. 8 C.F.R. §§ 1208.18(a)(1), (7); *Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1192 (10th Cir. 2005); *Khouzam v. Ashcroft*, 361 F.3d 161, 171 (2d Cir. 2004).

The determination that Tunis is unlikely to be subjected to government-condoned torture if she is returned to her village cannot stand, given the errors committed by the immigration judge and left uncorrected by the Board of Immigration Appeals. But if she can be returned to some place in Sierra Leone where she would not be forced to undergo another excision, the Convention's "more likely than not" criterion would not be satisfied. This issue has yet to be addressed in this proceeding and we cannot assume that it will be resolved against Tunis. For it is unclear whether there is any region in Sierra Leone where she would not be regarded as a "half-woman" by any man she has intercourse with and subjected to excision. That is an issue for exploration on remand, as is another unexplored

and unresolved issue—whether the secret societies would force a mature woman to undergo a remedial excision. Tunis was only 15 when she was threatened with that procedure and fled Sierra Leone, and she is now 23. So it would be premature to rule that Tunis is in fact entitled by the Convention Against Torture to remain in the United States. But the immigration judge's opinion is not reasoned, and its defects were not repaired by the Board's perfunctory discussion of the torture issue in its opinion affirming the immigration judge.

The petition for review is therefore granted (though only with respect to the issue of torture) and the case returned to the Board for further proceedings consistent with this opinion.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—5-15-06