In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-4696

ALEKSEY GENNADIYOVICH PETROV,

*Petitioner,*

*v.*

ALBERTO R. GONZALES, Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals

ARGUED SEPTEMBER 20, 2006—DECIDED OCTOBER 6, 2006

Before POSNER, EASTERBROOK, and EVANS, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* In 1998 the United States Embassy in Moscow gave Aleksey Gennadiyovich Petrov permission to enter the United States on parole, a reward for assistance that he had rendered in a criminal investigation. This status was renewed annually until Petrov was convicted of conspiracy to bribe federal officials as part of an immigration fraud. He admitted helping at least four other persons obtain bogus "green cards," accepting more than $10,000 for his efforts. Petrov was sentenced to 16 months' imprisonment, and his right to remain in the United States was not renewed. Nonetheless, he asked immigration officials to withhold removal; he also main-

tained that he would be subject to torture if returned to Russia. An immigration judge concluded that Petrov's conviction makes him ineligible for withholding of removal and that his return to Russia would be compatible with the Convention Against Torture. The Board of Immigration Appeals dismissed his appeal.

Petrov's criminal conviction forecloses most of the arguments he presents in this court.

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(i) of this title.

8 U.S.C. §1252(a)(2)(C). Section 1227(a)(2)(A)(iii) in turn provides that an alien who commits an "aggravated felony" while in the United States is removable. The definition of that phrase, in §1101(a)(43), includes a long list. At least two entries on that list cover Petrov's crime: subsection (M) refers to any crime of fraud or deceit in which the loss exceeds $10,000, and subsection (P) refers to any crime that entails the creation of bogus immigration credentials when the sentence exceeds a year in prison.

Petrov does not deny that his conviction is for an "aggravated felony." He took in at least $10,000, which is a loss to the aliens who paid him and received spurious documents in exchange. The crime thus qualifies under subsection (M).

His sentence for procuring these bogus immigration documents exceeded a year, so the crime also qualifies under subsection (P). Petrov's lawyer simply ignores the issue, choosing instead to contend that his crime is not a "particularly serious crime" for the purpose of 8 U.S.C. §1231(b)(3)(B)(ii). When a criminal's sentence is less than five years, the agency may decide that the crime is not "particularly serious" and, if so, the alien is eligible for withholding of removal. That was Petrov's principal argument to the Board: his sentence was less than five years, and he wanted the Board to declare the offense "not particularly serious" and remand for a hearing so that the immigration judge could apply the criteria for withholding of removal. Yet given §1252(a)(2)(C), the undisputed classification of Petrov's crime as an "aggravated felony" means that *we* are not authorized to inquire whether it is also a "particularly serious crime"—for the latter characterization affects the agency's decision, not ours.

An alien who commits a crime that is not an "aggravated felony," and may or may not be a "particularly serious crime," still encounters a jurisdictional hurdle, for §1252(a)(2)(B) forecloses judicial review of certain discretionary decisions. We concluded in *Tunis v. Gonzales*, 447 F.3d 547 (7th Cir. 2006), that classification of a particular crime as "particularly serious" often is discretionary. ("Often" is an important qualifier, for the agency does not have discretion to contradict its own rules of decision. A contention that the immigration judge or Board failed to use the right rule of law when making the classification therefore is open to judicial review under §1252(a)(2)(D), though a claim that the agency abused its discretion in weighing the multiple desiderata made relevant by the Board's definition of a "particularly serious crime" is not reviewable.) But when the crime is an "aggravated felony," §1252(a)(2)(C) blocks judicial review of the removal order whether or not the agency has made a discretionary

decision. Subsection (C) covers the removal order as a whole.

As Petrov sees things, the judiciary always may review the agency's application of the Convention Against Torture. After concluding in *Tunis* that the Board had not contradicted its own definition of the phrase "particularly serious crime" (and that its discretionary weighing of multiple factors was not reviewable), we then addressed, on the merits, Tunis's request for relief under the Convention Against Torture. Petrov wants us to follow suit. Yet the panel in *Tunis* considered only the effect of §1252(a)(2)(B), holding that it does not apply because relief under the Convention is non-discretionary. We did not ask whether §1252(a)(2)(C) independently forecloses review if the conviction is of a kind covered by that subsection. Because *Tunis* did not mention that subject, it does not contain a holding on the issue. See *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 91 (1998); *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952).

An earlier decision that addressed the effect of §1252(a)(2)(C) directly holds that a criminal alien's contentions under the Convention are not reviewable. See *Hamid v. Gonzales*, 417 F.3d 642 (7th Cir. 2005). That holding, which *Tunis* did not question (and Petrov ignores, even though the agency relies on it), is controlling today. Recall the language of subsection (C) (emphasis added): "no court shall have jurisdiction to review *any final order of removal* against an alien who is removable by reason of having committed" an aggravated felony. Unlike subsection (B), which forbids review of particular issues in a case otherwise within the court's authority, subsection (C) provides that the "order of removal" itself is unreviewable. There is no exception for arguments under the Convention. This does not mean that the Convention may be ignored; it means only that the administrative resolution of disputes about

the risk a criminal alien faces in his native land is conclusive.

Subsection (C) *does* have one exception: it refers to subsection (D), which as amended by the Real ID Act of 2005 permits "review of constitutional claims or questions of law". No rule of law prevents the removal of aliens who have committed immigration fraud. See *INS v. Yueh-Shaio Yang*, 519 U.S. 26 (1996); *Alsagladi v. Gonzales*, 450 F.3d 700 (7th Cir. 2006). Nor did the Board make any legal error in applying the Convention Against Torture. Factual mistakes, if any, in understanding how Russia treats persons in his position differ from "questions of law"; Petrov does not argue otherwise. He maintains, however, that the agency violated the due process clause of the fifth amendment by assigning his hearing to Immigration Judge George P. Katsivalis, who until his appointment as an IJ in 2005 had been the Chief Counsel of the Chicago Office of Immigration and Customs Enforcement. Katsivalis had served in an equivalent position during 2002 and 2003 with ICE's predecessor, the Immigration and Naturalization Service. Petrov insists that Katsivalis must have played some role in the agency's decision to terminate his parole and seek his removal under 8 U.S.C. §1228(b)—and that, even if he did not, his service as an IJ created an appearance of impropriety.

Petrov's position has neither factual nor legal support. Nothing in the record implies that Katsivalis had any involvement in ICE's decision to commence removal proceedings against Petrov. The Chief Counsel of a large office is unlikely to play any role in routine decisions of this kind. We held in *Mireles v. Gonzales*, 433 F.3d 965 (7th Cir. 2006), that the alien must produce evidence that his case is the rare one in which the head of an office took part in a routine action; Petrov's situation is functionally identical.

As for law: Petrov assumes that the Constitution forbids an agency official who has participated in a prosecution

decision to play a role in its adjudication, but he does not cite a single case for that proposition. He mentions 8 U.S.C. §1229a(b), which entitles aliens to a reasonable opportunity to present and examine evidence, but a judge's former position does not detract from this right, which concerns what happens at the hearing rather than the presiding officer's curriculum vitae. Officials of the Executive Branch (a category that includes immigration judges) play dual roles all the time. Commissioners of the Equal Employment Opportunity Commission file "Commissioner's charges" of employment discrimination that the Commission proceeds to adjudicate. The Federal Trade Commission and Securities and Exchange Commission issue complaints that accuse respondents of violating the antitrust or securities laws; after an administrative law judge takes evidence, the same Commissioners who approved the complaint decide whether the respondent has violated the law and, if so, what remedy is appropriate. No decision of which we are aware holds that this mixture of prosecutorial and adjudicatory functions violates the Constitution. There is no actual conflict of interest: No Commissioner's pocketbook is on the line in any of these decisions.

Whether "appearance of impropriety" is a constitutional doctrine (or only based on statute) is a subject that may be left open today, as it was in *Del Vecchio v. Illinois Department of Corrections*, 31 F.3d 1363 (7th Cir. 1994) (en banc). Claims of an "appearance of impropriety" are assessed from the perspective of an informed third party. See *Liteky v. United States*, 510 U.S. 540, 548 (1994); *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988). Because the record does not offer any reason to believe that IJ Katsivalis participated in the decision to commence proceedings against Petrov, an objectively reasonable and well-informed person would not perceive any impropriety. Consider a parallel: a federal judge who joined the bench

after service as a United States Attorney or a member of the Cabinet. Such a person would not be disqualified just because there was a possibility that subordinates had made a decision that might be contested in court. Instead the right question would be whether the new judge had "served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy". 28 U.S.C. §455(b)(3). See also subsection (b)(1) (disqualification required if the judge has "personal knowledge of disputed evidentiary facts concerning the proceeding"). The Board of Immigration Appeals has adopted the standards of §455 for itself and the immigration judges. See *Matter of Exame*, 18 I&N Dec. 303, 306-07 (1982). Nothing suggests that IJ Katsivalis "participated as counsel" in proceedings against Petrov, expressed an opinion about Petrov's rights, or gained knowledge of any disputed material facts about Petrov, before his appointment as an immigration judge. No legal rule forbids his participation; whether recusal would have been prudent is not a pure question of law and so is outside the Real ID Act's exception to §1252(b)(2)(C).

None of Petrov's other arguments requires discussion. The petition is dismissed for lack of jurisdiction.

A true Copy:

      Teste:

 

 

_____
      *Clerk of the United States Court of*
              *Appeals for the Seventh Circuit*