# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 06-1625

STEPHEN BOSEDE,

*Petitioner,*

*v.*

MICHAEL B. MUKASEY, Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A23-162-352

ARGUED FEBRUARY 12, 2007—DECIDED JANUARY 14, 2008

Before KANNE, ROVNER, and SYKES, *Circuit Judges.*

ROVNER, *Circuit Judge.* Stephen Bosede, a Nigerian citizen who has lived in the United States for 27 years, was ordered removed after he was convicted twice for possession of small amounts of cocaine and once for retail theft. In his petition for review, he principally argues that the Immigration Judge (IJ) erroneously concluded that his two drug offenses are "particularly serious crimes" that make him statutorily ineligible for withholding of removal, and that the IJ violated his right to due process by rejecting his application for withholding of removal relief under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treat-

ment or Punishment (CAT). We grant his petition for review and remand to the Board of Immigration Appeals (BIA).

Bosede came to the United States from his native Nigeria in 1980 and became a permanent resident in 1982. He is married to a U.S. citizen and has two children. In 1997 he was diagnosed with HIV, and he now follows a strict treatment regimen. He is an active member of the community—he holds a job, stays involved in his church, performs volunteer work, and attends college classes. But he also has a criminal record. In 1993 he was convicted of possessing 0.1 gram of cocaine and was sentenced to two years in prison. *See* 720 ILCS 570/402(c). In 1995 he again was convicted of possessing cocaine, this time 0.4 gram, and was sentenced to a one-year term of imprisonment. *See id.* And in 2000 he received a one-year sentence after he was convicted of retail theft for drinking liquor in a grocery store without first stopping at the cash register to pay for it. *See* 720 ILCS 5/16A-3(a). After the third conviction the Immigration and Naturalization Service, now the Department of Homeland Security, charged him with removability as an alien convicted of a drug offense and an aggravated felony. *See* 8 U.S.C. § 1227(a)(2)(A)(iii), (B)(i). Bosede then applied for asylum, withholding of removal, and protection under the CAT claiming he would be persecuted on the basis of his religion—he is a Christian—and his HIV status. But the BIA ruled against him and ordered him removed, and he petitioned this court for review.

The first time this case was before us, we dismissed Bosede's petition because we lacked jurisdiction to review his final order of removal. *Bosede v. Ashcroft*, 309 F.3d 441 (7th Cir. 2002). But we expressed concerns about perceived flaws in the proceedings and remarked that the IJ apparently had decided "Bosede's fate based on a fundamental mistake of fact, brought about through

sloppy legal representation and a general failure to follow up on information that would have brought the mistake to light." *Id*. at 443. We encouraged the government to agree to reopen the proceedings, *id*. at 447, which it did. The BIA granted Bosede's and the government's joint motion to reopen and remanded the case to the IJ.

In the second round of proceedings before the IJ in 2003, Bosede submitted an affidavit reiterating that he fears persecution in Nigeria because he is a Christian and is infected with HIV. He maintained that he visited Nigeria in 1999 and was detained by authorities at the airport when they discovered he is HIV-positive. They released him, he explained, only when he agreed to stay in a hotel they specified. Bosede, though, feared the authorities would harm him, so he escaped from the hotel. He was able to leave Nigeria, he said, only by paying a bribe to get through security undetected.

In this second round Bosede further asserted that if returned to Nigeria he will be imprisoned under a law commonly known as Decree 33, which mandates a five-year sentence for "any Nigerian citizen found guilty in any foreign country of an offense involving narcotic drugs or psychotropic substances and who thereby brings the name of Nigeria into disrepute." National Drug Law Enforcement Agency (Amendment) Decree No. 33 (1990) (Nigeria). The IJ requested and received evidence from the State Department's Bureau of Democracy, Human Rights and Labor, which advised that Decree 33 is still in force.

Bosede also introduced evidence that, in a Nigerian prison, he would face extreme hardship because of his HIV status. He submitted news reports showing that the death rate of HIV-infected prisoners in Nigeria is high because they do not have access to doctors and medication, and because the poor nutrition that Nigerian

prisoners suffer eliminates or greatly reduces the effectiveness of any medication they might receive. The State Department's submission supported this contention, noting that at least one HIV-positive prisoner in Nigeria had died because of insufficient medical treatment. Bosede also submitted reports from the State Department, Human Rights Watch, and Amnesty International, all of which noted that prisoners in Nigeria are severely mistreated and that the responsible Nigerian officials operate with impunity. *See* U.S. Department of State, *Report on Human Rights Practices: Nigeria* 2, 5-6 (2005); Human Rights Watch, *Obasanjo Confirms Torture, Killing by Police* (Aug. 22, 2005), http://hrw.org/english/docs/2005/08/22/nigeri11650.htm; Amnesty International, *Nigerian Prisoners Die in 'Inhuman' Conditions* (Mar.-Apr. 1998). In short, Bosede argued that a return to Nigeria was akin to a death sentence.

The IJ again rejected Bosede's application for withholding of removal and CAT protection (by this time Bosede had abandoned his asylum claim). The IJ first concluded that Bosede is statutorily ineligible for withholding of removal because his two drug offenses are "particularly serious crimes." If an alien has committed a particularly serious crime, the alien is ineligible for withholding of removal. *See* 8 U.S.C. § 1231(b)(3)(B). The Attorney General has the discretion to determine whether an alien has committed a particularly serious crime. *See id.* The IJ noted that the Attorney General has determined that aggravated felonies involving drug trafficking are presumed to be particularly serious crimes. *See In re Y-L*, 23 I. & N. Dec. 270, 274 (BIA 2002). He observed that the Immigration and Nationalization Act defines "drug trafficking crime," 8 U.S.C. § 1101(a)(43)(B), by incorporating the definition in 18 U.S.C. § 924(c)(2), which is "any felony punishable under the Controlled Substances Act." The IJ reasoned that because both of Bosede's convic-

tions for cocaine possession are felonies under Illinois law, *see* 720 ILCS 570/402(c), and because they involved conduct punishable under the Controlled Substances Act, *see* 21 U.S.C. § 844(a), they meet this definition of drug trafficking. Even though the IJ noted that each conviction involved less than one gram of cocaine, he concluded without elaboration that Bosede had not "presented the type of rebuttal evidence necessary to offset the conclusion that he has been convicted of a particularly serious crime."

The IJ went on to deny Bosede's CAT claim and also explained that he would have denied Bosede's application for withholding of removal even if Bosede was not statutorily barred from bringing it. He rejected Bosede's argument that, if returned to Nigeria, he would be imprisoned because of his drug possession in the United States and would suffer torture in prison as an HIV-positive inmate. The IJ recognized that Nigerian prisons are "decrepit," that they often lack "healthcare and access to medication," and that an "HIV positive prisoner could face a possibility of death due to a lack of medication." Yet the IJ deemed none of this relevant on the theory that, although Decree 33 is still in force, Bosede had "not shown that he will be necessarily detained on his return to Nigeria." The IJ acknowledged that because of Decree 33 "a drug offender should worry about his survival," but he determined that Bosede had not proved he would "automatically be detained." Further, the IJ remarked that since Bosede had once paid a bribe to escape Nigeria after being detained, he might have "other options available to avoid detention" even if he is arrested when returned. In a short order the BIA affirmed the IJ's ruling, so we examine the IJ's written opinion as supplemented by the BIA. *See Gjerazi v. Gonzales*, 435 F.3d 800, 807 (7th Cir. 2006).

Bosede first argues that the IJ erred as a matter of law in characterizing each of his cocaine possessions as a "drug trafficking crime" under 18 U.S.C. § 924(c)(2), and consequently, as a particularly serious crime under 8 U.S.C. § 1231(b)(3)(B) and *In re Y-L*, 23 I. & N. Dec. at 274. The government counters that 8 U.S.C. § 1252(a)(2)(C) bars our jurisdiction because Bosede is an aggravated felon.[1] The government is correct that for an alien with an aggravated felony conviction, § 1252(a)(2)(C) "blocks judicial review of the removal order whether or not the agency has made a discretionary decision," such as whether the crime is "particularly serious." *Petrov v. Gonzales*, 464 F.3d 800, 802 (7th Cir. 2006). Bosede has conceded that he is an aggravated felon, and ordinarily that would be the end of the story—we would be unable to review his removal order. But we do retain jurisdiction to consider constitutional claims and questions of law, *see* 8 U.S.C. § 1252(a)(2)(D); *Feto v. Gonzales*, 433 F.3d 907, 912 (7th Cir. 2006); *Ramos v. Gonzales*, 414 F.3d 800, 802 (7th Cir. 2005), including due-process claims, *see Petrov*, 464 F.3d at 802-03 (holding that court lacked jurisdiction to consider aggravated felon's argument that BIA erred in finding crime particularly serious, but going on to consider due-process argument). And here the flaws in the IJ's reasoning cause us to doubt whether Bosede received the fair hearing to which he is statutorily and constitutionally entitled.

The IJ determined that Bosede committed a drug trafficking crime and presumed that this offense was a

---

[1] We note that the analysis that the IJ used to determine whether Bosede's offenses for simple possession of cocaine constitute "drug trafficking crimes" is inconsistent with the Supreme Court's decision in *Lopez v. Gonzales*, 127 S. Ct. 625, 633 (2006). However, Bosede concedes that his conviction for retail theft makes him an aggravated felon.

"particularly serious crime" barring withholding of removal. But that presumption is not preclusive, and there lies the real flaw in the government's jurisdictional argument, because the IJ failed to give serious consideration to whether the presumption must give way in this case. The BIA has recognized that an alien can rebut the presumption by establishing "unusual circumstances." *In re Y-L*, 23 I. & N. Dec. at 276. To do so, the alien must first establish that his drug trafficking crime involved (1) a very small quantity, (2) a very modest payment, (3) only peripheral involvement, (4) the absence of any violence or threat of violence, (5) the absence of any connection to organized crime or terrorism, and (6) the absence of any adverse or harmful effect on juveniles. *Id.* at 276-77. If the alien satisfies the six criteria, the alien must also show "other, more unusual circumstances (*e.g.*, the prospective distribution was solely for social purposes, rather than for profit)." *Id.* at 277. Here, the IJ decreed that Bosede did not put forward "the type of rebuttal evidence necessary to offset the conclusion that he has been convicted of a particularly serious crime." But this statement is unexplained and undercut by the IJ's findings that both of Bosede's offenses were for possession of less than one gram of cocaine and that Bosede was not involved in dealing drugs. Furthermore, there are other facts in the record that support the argument that Bosede meets the criteria needed to establish unusual circumstances. The IJ did not confront this evidence in any meaningful way, and his failure to consider all of the evidence leads us to question the adequacy of Bosede's hearing.

And this is not all. The IJ's cavalier attitude towards Bosede's claims is reflected elsewhere in his opinion. In rejecting Bosede's contention that he more likely than not would be imprisoned if returned to Nigeria, the IJ observed that Bosede could bribe Nigerian officials to

avoid imprisonment. The IJ relied on Bosede's testimony that he once secured his release from custody by paying a bribe and concluded that if Bosede is forced to return to Nigeria he may have "other options available to avoid detention." We are appalled that the IJ would rest his decision on the absurd proposition that Bosede could evade imprisonment, mistreatment, and possibly death by approaching his jailers and trying to buy his way out. We cannot agree with the government's argument this was simply a "factual finding" and, at most, an unimportant comment that did not form the basis of the IJ's decision. We have said before and underscore here that whether an alien might succeed in escaping persecution or torture through bribery is an irrational and altogether improper consideration in deciding a claim for asylum or other relief. *See Oyekunle v. Gonzales*, 498 F.3d 715, 717 (7th Cir. 2007); *Giday v. Gonzales*, 434 F.3d 543, 555 (7th Cir. 2006) (observing that it is error of law for IJ to deny relief based on assumption that refugee can escape persecution through bribery).

Furthermore, even after seeking and obtaining confirmation from the State Department that Decree 33 remains in force, the IJ still scoffed at Bosede's contention that his minor drug offenses will land him in prison if he is returned to Nigeria. The IJ reasoned that Bosede had not shown that Decree 33 would be enforced against *him*, but we are confused as to what kind of further proof the IJ expected. Short of presenting himself to Nigerian authorities and waiting to see their reaction, we do not fathom how, at this juncture, Bosede could do more than take at face value the State Department's evidence that Decree 33 has not fallen into desuetude. The State Department did not qualify its confirmation, and yet without explanation the IJ ignored the import of the evidence he received: Bosede has run afoul of a currently enforced decree that requires the imprisonment of "any Nigerian

citizen found guilty in any foreign country of an offense involving narcotic drugs or psychotropic substances and who thereby brings the name of Nigeria into disrepute."

Aliens in the United States, no matter their immigration status, are entitled to due process. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Kerciku v. I.N.S.*, 314 F.3d 913, 917 (7th Cir. 2003). Thus, they are protected against arbitrary government action that "shocks the conscience" and cannot be justified by any government interest. *See County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998); *United States v. Salerno*, 481 U.S. 739, 746 (1987); *Remer v. Burlington Area Sch. Dist.*, 286 F.3d 1007, 1013 (7th Cir. 2002). This right, which extends to removal hearings, *see Capric v. Ashcroft*, 355 F.3d 1075, 1087 (7th Cir. 2004), and has been codified, *see* 8 U.S.C. § 1229a(b)(4)(B); 8 C.F.R. § 1240.1(c), guarantees a proceeding where the alien has a "'meaningful opportunity to be heard.'" *Boci v. Gonzales*, 473 F.3d 762, 768 (7th Cir. 2007) (quoting *Kerciku*, 314 F.3d at 917).

The government contends that we cannot consider whether the proceedings comported with due process because Bosede failed to exhaust his administrative remedies by raising this issue before the BIA in the first instance. As the government concedes, however, when there has been a fundamental, substantive constitutional violation, exhaustion is not required. *See Pasha v. Gonzales*, 433 F.3d 530, 536-37 (7th Cir. 2005); *Asani v. I.N.S.*, 154 F.3d 719, 729 (7th Cir. 1998). Here, the IJ's flawed reasoning and reliance on an improper consideration constitute a "fundamental failure of due process," so we can consider Bosede's due-process argument regardless of whether he exhausted his administrative remedies by addressing the violation before the BIA. *See Asani*, 154 F.3d at 729.

Our reading of the administrative record leaves us convinced that the IJ cared little about the evidence and instead applied whatever rationale he could muster to justify a predetermined outcome. *See Kerciku*, 314 F.3d at 918 (finding violation of procedural due process where IJ first made up his mind about alien's claims and refused to listen to testimony). The flaws in the IJ's opinion call into question the fairness of the proceedings, and since we cannot be confident that Bosede's hearing comported with statutory requirements or met minimum standards of due process, Bosede is entitled to a new one. *See Floroiu v. Gonzales*, 481 F.3d 970, 976 (7th Cir. 2007). And to avoid repetition of the same mistakes the third time around, we urge the agency to refer this case to a different immigration judge. *See Niam v. Ashcroft*, 354 F.3d 652, 660 (7th Cir. 2004).

Accordingly, we GRANT the petition for review and REMAND for further proceedings consistent with this opinion.

A true Copy:

       Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*