# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-2070

ABDALLA ALSAGLADI,

*Petitioner,*

*v.*

ALBERTO R. GONZALES, Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals

ARGUED APRIL 19, 2006—DECIDED JUNE 13, 2006

Before COFFEY, EASTERBROOK, and MANION, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Abdalla Alsagladi, a citizen of Yemen, arrived in the United States on a visa issued by the Embassy in Saudi Arabia. Alsagladi told the consular staff that he wanted to come as a tourist; the visa he received was so limited. His representations were false; Alsagladi now concedes that his plan was emigration. He did not depart when the visa expired. After 10 months in the United States he applied for asylum, contending that Yemen had persecuted him for his socialist politics. He testified at a removal hearing that thugs in the employ of Yemen's government repeatedly tried to kill him. An

immigration judge disbelieved his story, observing that Alsagladi had been a responsible public official (Yemen's equivalent of a clerk of court with a joint appointment as a magistrate judge), and that it is hard to understand why a nation would employ someone in a high-ranking position while trying to bump him off because his politics were repugnant. Yemen recognizes the Socialist Party as legitimate. It operates openly and publishes a newspaper; some of its members are serving in that nation's parliament. The immigration judge added that, even if Alsagladi were eligible for refugee status, his use of deceit to obtain a visa would lead to an adverse exercise of discretion. The Board of Immigration Appeals affirmed summarily, making the IJ's opinion the agency's final word.

Status as a victim of persecution makes an alien *eligible* for asylum but does not compel an exercise of discretion in his favor. An alien who enters the United States by fraud must show strong equities to merit a favorable exercise of that discretion. See *Matter of Pula*, 19 I.&N. Dec. 467 (1987). This is so not only because the United States seeks to encourage candor in visa applications but also because someone who concedes willingness to lie in order to obtain residence in this nation (as Alsagladi does) may well be trying to pull the wool over the agency's eyes in support of his application for asylum as well as in his application for a visa. We limit our attention to this subject because, when an agency is entitled to deny relief as an exercise of discretion, it is always unnecessary and often inappropriate for a court to discuss the eligibility issue. See *INS v. Bagamasbad*, 429 U.S. 24 (1976) (holding this with respect to judicial review of a decision denying an alien's application for relief on the ground that the alien's fraud in obtaining a visa justified an adverse exercise of discretion).

Alsagladi does not deny that immigration officials are entitled to remove refugees who entered the United States by fraud. Fraud in obtaining a visa renders any alien inadmissible, see 8 U.S.C. §1182(a)(6)(C); it requires a

favorable exercise of discretion to relieve the alien of this bar and allow a grant of asylum. The immigration judge decided not to exercise discretion in Alsagladi's favor. He maintains that discretion was abused, see 8 U.S.C. §1252(b)(4)(D), because the IJ's supposed errors in evaluating his credibility (the ground on which asylum was denied on the merits) influenced the weight given to the equities on his side. This amounts to little more than a plea that we disregard *Bagamasbad* and adopt a rule that full treatment of entitlement issues precede any exercise of administrative discretion. The Supreme Court held, however, that immigration judges and federal courts are entitled to pretermit comprehensive treatment of the merits if they have decided to deny relief on discretionary grounds in any event.

The sort of countervailing equities that the Board of Immigration Appeals discussed in *Pula* are limited to the circumstances of the alien's escape from persecution and entry into the United States. Until *Pula* the Board had deemed "the fraudulent avoidance of orderly refugee procedures to be an extremely adverse factor which could only be overcome with the most unusual showing of countervailing equities." 19 I.&N. Dec. at 472. *Pula* changed that approach to one in which fraudulent entry is a "serious adverse factor" that should be considered in light of "the totality of the circumstances and actions of an alien in his flight from the country where he fears persecution" (*id.* at 473). In other words, the Board now asks whether fraud was employed to escape from persecution (which it deems "not a significant adverse factor", *id.* at 474) or was gratuitous. In *Pula* itself the alien endured persecution not only in his native land (Albania) but also in the nation to which he initially fled (Yugoslavia). He came to the United States with the aid of a purchased identity card, fearing that display of an Albanian or Yugoslavian passport would have led to his immediate return before he could seek asylum. After crediting both this story and Pula's statement that he

did not know that the United States issues visas to declared refugees, the Board concluded that the alien's deceit was justifiable.

Alsagladi has no similar excuse. He had left Yemen and was living in Saudi Arabia, which he does not accuse of persecution. His brother, with whom he stayed in Saudi Arabia, had been granted permanent residence in that nation. He could have asked for a U.S. visa as a refugee but did not. Alsagladi, unlike Pula, has never claimed ignorance of that option; he is too well educated and aware of legal niceties to make such an argument credibly. Yet instead of telling the consular staff honestly that he wanted to enter the United States as a refugee—a claim that could have been examined by officials who had access to contacts in Yemen that could have verified or refuted his story—Alsagladi swore falsely about the purpose of his visit and his intentions after reaching the United States. The immigration judge stated that even this deceit would have been excusable had the Saudi government been preparing to return Alsagladi to Yemen. Because Alsagladi had been allowed to stay in Saudi Arabia indefinitely, however, there was no need for him to take a quick (but perjurious) route to a more hospitable destination.

Alsagladi chastises the immigration judge for suggesting that he could have sought permanent residence (or at least refugee status) in Saudi Arabia; his lawyer rightly observes that the United States does not require refugees to remain in the first nation they reach after their escape, unless they have become firmly settled there, 8 U.S.C. §1158(b)(2)(A)(vi); 8 C.F.R. §208.15, or a treaty so provides. 8 U.S.C. §1158(a)(2)(A). (We do not have such a treaty with Saudi Arabia.) Unlike Alsagladi, however, we do not understand the IJ to have made the legal error of insisting that aliens stay in the first nation they reach following escape from persecution. The point, rather, was that Saudi Arabia was neither persecuting Alsagladi nor insisting that

he depart; that respite eliminated any urgent need for him to dissemble his way into the United States. The visa fraud was worse, in the IJ's eyes, because it was gratuitous.

Aliens who take the easy but dishonest path when a more honorable if more difficult one is open cannot insist on administrative lenity. The agency did not abuse its discretion here, and Alsagladi's petition for review is denied.

A true Copy:

       Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*