In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-1127

MUHAMMAD SIDDIQUE,

*Petitioner*,

*v.*

MICHAEL B. MUKASEY, Attorney General of
the United States,

*Respondent*.

Petition for Review of a Decision of the
Board of Immigration Appeals

ARGUED OCTOBER 15, 2008—DECIDED OCTOBER 31, 2008

Before EASTERBROOK, *Chief Judge*, and COFFEY and WOOD,
*Circuit Judges*.

EASTERBROOK, *Chief Judge*.    An alien who knowingly
presents a frivolous application for asylum, after being
warned that every representation must be truthful, is
"permanently ineligible for any benefits" under the
immigration laws. 8 U.S.C. §1158(d)(6). A regulation
defines a frivolous application as one any material element

of which has been fabricated. 8 C.F.R. §1208.20. See also *Matter of Y– L–*, 24 I.&N. Dec. 151, 155 (2007). Both an immigration judge and the Board of Immigration Appeals concluded that Muhammad Siddique knowingly presented a frivolous application for asylum; the result is not only a removal order but also ineligibility for adjustment of status.

Siddique, a citizen of Pakistan, contended that he had been persecuted (and faced future persecution) in Pakistan because he worked for and supports the Mohajir Qaumi Movement (MQM), a political party of *mohajirs*—persons who immigrated from India when the British colony was partitioned in 1947, and their descendants. Siddique contends that the police in Karachi, where he lived, frequently arrest, beat, and even kill MQM's members and supporters. According to Siddique's application for asylum and testimony at a hearing, the police gunned down his wife and two-year-old son as the family was leaving an MQM meeting. The police arrested and detained him after these events; as soon as he was released on bond, Siddique testified, he went into hiding and fled to Canada and, eventually, the United States. To bolster his story, Siddique submitted autopsy reports for his wife and son, plus a police report documenting his arrest (according to this report, the police charged Siddique with attempted murder).

The IJ credited Siddique's story but denied his application for asylum, in part because he had failed to seek asylum in Canada before entering the United States. While Siddique's appeal to the BIA was pending, he married a

citizen of the United States, who applied on his behalf for an immediate-relative visa. Meanwhile immigration officials studied the documents that Siddique had submitted to the immigration judge and concluded that they are phony. Both Siddique and the agency asked the BIA to remand without reaching the merits—Siddique so that his status could be adjusted to that of permanent resident on an I-130 visa, and the agency so that the IJ could consider the analysis of the documents.

Faced with proof that the police and autopsy reports had been forged, plus proof that he had not married in Pakistan or had a child, Siddique confessed during a hearing on his wife's visa application that "none of the incidents in [the asylum] claim ever happened." In a new hearing before the IJ, Siddique added that he had invented "some of" the activities he claimed to have performed as an employee and supporter of the MQM. Still, he insisted, all members of MQM face persecution in Pakistan, so he renewed his request for asylum. The IJ found his application frivolous, since it rested on both forgery and perjury, which Siddique did not recant until after the agency had tracked down the truth. The conclusion that Siddique's application was frivolous disqualified him from adjustment of status, and the IJ said that it would therefore be pointless to continue the proceedings until the agency resolved his wife's I-130 application. The immigration judge also denied asylum as an exercise of discretion, given Siddique's dissembling, independent of the formal finding that the application was frivolous. The BIA affirmed.

The portion of the bureaucracy responsible for

immediate-relative applications chugged away and approved his wife's petition in May 2008. Siddique argues that by approving this petition, and taking related steps, the Citizenship and Immigration Service has "waived" his disqualification under §1158(d)(6) and that we should therefore remand with instructions to adjust his status to that of permanent resident. Neither §1158(d)(6) nor any other section of the Immigration and Nationality Act allows the agency to "waive" an alien's permanent disqualification. Nor has it done so. The bureau responsible for I-130 matters processed his wife's application—perhaps because the left hand does not know what the right hand is doing, perhaps to avoid delay should this court vacate the disqualification order—but a favorable decision on that application is just one step toward permanent residence. An approved immediate-relative application is a necessary but not a sufficient condition for adjustment of status. The motion for remand is denied.

To the extent that Siddique wants us to review the IJ's order denying his request for a continuance, we lack jurisdiction. See 8 U.S.C. §1252(a)(2)(B)(ii); *Ali v. Gonzales*, 502 F.3d 659 (7th Cir. 2007). But the finding that his application for asylum was frivolous does not represent an exercise of administrative discretion within the scope of §1252(a)(2)(B)(ii), so Siddique is entitled to judicial review of the agency's conclusion that he is permanently ineligible for any benefit under the immigration laws.

Whether an application rests on false submissions is a question of fact. Whether a falsehood is knowing also is a question of fact. Likewise whether a given proposition is

"material" is a question of fact. See *United States v. Gaudin*, 515 U.S. 506 (1995). It follows that the inquiry for a court of appeals is whether the agency's decision is supported by substantial evidence. See *Lazar v. Gonzales*, 500 F.3d 469, 474 (6th Cir. 2007); *Ignatova v. Gonzales*, 430 F.3d 1209, 1214 (8th Cir. 2005). Siddique relies on several decisions suggesting that judges should play a larger role because of the unyielding consequence prescribed by §1158(d)(6). See *Luciana v. Attorney General*, 502 F.3d 273, 278–79 (3d Cir. 2007); *Chen v. Mukasey*, 527 F.3d 935, 939 (9th Cir. 2008); *Barreto-Claro v. Attorney General*, 275 F.3d 1334, 1338 (11th Cir. 2001). But all of these decisions concern *de novo* review (subject to qualification under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)) of the agency's legal understandings. There is no conflict on the standard of review when the only issue is whether particular representations are knowingly false or material.

Siddique maintains that the IJ and BIA failed to inquire whether his fraud was material. That's not so. Both the IJ and the BIA observed that the representations—that Siddique's wife and son had been murdered after a political meeting, and that he had been arrested on trumped-up charges—were the application's principal basis. Take them away and the application collapses. Siddique knew that his representations were false: Although it is possible to submit forged documents thinking them to be genuine (someone else may have misled the alien about their provenance, see *Kourski v. Ashcroft*, 355 F.3d 1038 (7th Cir. 2004)), Siddique knew that he had neither a wife nor a child in Pakistan, that the police had not murdered his (nonexistent) family, and that he had not been arrested and

charged with attempted murder. He could not have believed that his representations were true.

According to Siddique, people regularly lie to the government in Pakistan to get benefits, so he thought that he should proceed in the same fashion in the United States. We need not decide whether Siddique's latest representation about life in Pakistan is correct (his history does not inspire confidence). Aliens must tell the truth to officials in the United States. The possibility of cultural differences is one reason why Congress directed immigration officials to notify aliens, at the outset of the asylum process, that honesty is essential, and to foreclose remedies under the immigration laws only if an alien tells material lies after being informed about the consequences of frivolous applications. 8 U.S.C. §1158(d)(4)(A), (6). Siddique received the required notice. He chose to disregard the warning and must pay the price of his decision. He should count himself lucky that he has not been prosecuted for perjury.

The petition for review is dismissed for want of jurisdiction to the extent that it challenges the IJ's discretionary decisions and denied to the extent that it contests the permanent bar on any benefit under the immigration laws.