In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-3384

PAVEL PAVLOV,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals

ARGUED SEPTEMBER 17, 2012—DECIDED OCTOBER 1, 2012

Before EASTERBROOK, *Chief Judge*, and BAUER and
WOOD, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Pavel Pavlov, a citizen of
Bulgaria, entered the United States in 2000 on a
nonimmigrant visa and did not depart when it expired.
In 2006 he filed an application for asylum. The applica-
tion was false in almost every particular, starting with
Pavlov's assertion that he had entered the United States
in 2005. (This was designed to fool the agency into be-

lieving that the application was timely, for aliens have only one year after entry to request asylum. 8 U.S.C. §1158(a)(2)(B).) Pavlov asserted that he had been persecuted in Bulgaria because he is a gypsy. He swore that multiple attacks had broken his ribs and collarbone and knocked out two of his teeth and that he was "running out of body parts that have not been touched by the hatred and the violence." He repeated this story in May 2006 during an interview with an asylum officer.

About a year after Pavlov sought asylum, his wife, recently naturalized as a citizen of the United States, asked immigration officials to adjust his status to that of permanent resident. At a hearing in March 2007 Pavlov withdrew his application for asylum, acknowledged that he entered in 2000 rather than 2005, and conceded that he is not a gypsy and was not persecuted in Bulgaria. This left him without entitlement to remain in the United States (for his visa had expired in 2001), but the immigration judge deferred proceedings to allow processing of his wife's application on his behalf.

At a later hearing the IJ ordered Pavlov's removal, concluding that he is ineligible for adjustment of status given 8 U.S.C. §1158(d)(6). This provides that "[i]f the Attorney General determines that an alien has knowingly made a frivolous application for asylum and the alien has received the notice under paragraph (4)(A), the alien shall be permanently ineligible for any benefits under [the Immigration and Nationality Act], effective as of the date of a final determination on such application." Paragraph (4)(A) says that the Attorney General

must "advise the alien of the privilege of being represented by counsel and of the consequences, under paragraph (6), of knowingly filing a frivolous application for asylum". The IJ found that Pavlov had received the required notice yet had filed a frivolous application. That renders him ineligible for any immigration benefit. The Board of Immigration Appeals agreed with the IJ, but Pavlov asks us to vacate the order of removal.

Pavlov acknowledges that the application for removal was frivolous, so we need not determine what kinds of falsehoods or shortcomings in an application make it "frivolous." He contends, however, that §1158(d)(6) applies only when an alien asks an immigration judge to grant asylum. If that is so, an alien would be entitled to make a frivolous application and maintain it for years—extending his stay in the United States, and forcing the agency to expend resources investigating the claim—provided that he dropped the application and sought different relief at the outset of the hearing. Yet §1158(d)(6) prescribes adverse consequences when "an alien has knowingly *made* a frivolous application for asylum" (emphasis added). Pavlov made his application in 2006. That he did not *repeat* his allegations in front of an immigration judge does not detract from the fact that he "knowingly made a frivolous application for asylum".

This leads Pavlov to concentrate on the warning requirement of §1158(d)(4)(A). Only a warning from the IJ suffices, he contends. What §1158(d)(4)(A) says, however, is that the Attorney General must deliver the warning. When the Department of Homeland

Security was created, many of the Attorney General's responsibilities (including this one) were transferred to United States Citizenship and Immigration Services. That agency warned Pavlov twice: once in the original application form, and a second time before the interview in May 2006. The warning, set out in 8 C.F.R. §208.9, reads (boldface in original):

> **WARNING: Applicants who are in the United States illegally are subject to removal if their asylum or withholding claims are not granted by an Asylum Officer or an Immigration Judge. Any information provided in completing this application may be used as a basis for the institution of, or as evidence in, removal proceedings even if the application is later withdrawn. Applicants determined to have knowingly made a frivolous application for asylum will be permanently ineligible for any benefits under the Immigration and Nationality Act.**

This language complies with the statute and, because it was delivered by the Attorney General's surrogate, supports disqualification under §1158(d)(6). At least two other courts of appeals have concluded that delivery of this warning in the application itself, or at the time of the interview, suffices. *Ribas v. Mukasey*, 545 F.3d 922 (10th Cir. 2008); *Cheema v. Holder*, 2012 U.S. App. LEXIS 18742 (9th Cir. Sept. 6, 2012). This court said the same thing in *Siddique v. Mukasey*, 547 F.3d 814 (7th Cir. 2008). If it was not a holding then, it becomes a holding now. Practical considerations support applying the statutory

text as written. Frivolous applications for asylum require investigation and divert time that could be put to use addressing serious claims by honest applicants. Section 1158(d)(6) is designed to prevent aliens from creating these costs—and helping themselves to additional time in the United States—during the months or years before an immigration judge convenes a hearing.

Pavlov insists that he did not "knowingly" make a frivolous application, because he simply signed a blank form handed to him by a private immigration-aid group, which later filled in the spurious details. The IJ did not believe him. Substantial evidence supports the IJ's conclusion. After all, Pavlov repeated his factual assertions orally before an asylum officer; that can't be blamed on anyone else. The IJ also disbelieved Pavlov's assertion that he does not understand English. The IJ observed that Pavlov testified in excellent English and declined an offer of a translator's assistance. Pavlov, who lied in 2006 in order to get immigration benefits, can't be surprised when an immigration judge concludes that he has told new lies in an effort to avoid the consequences of the old lies. He has revealed a propensity to put self-interest ahead of his legal obligation to tell the truth. Cf. *Alsagladi v. Gonzales*, 450 F.3d 700 (7th Cir. 2006).

Pavlov makes some additional arguments, such as a contention that the IJ improperly amended the notice to appear and impeded his opportunity to adduce evidence. The agency asserts that these contentions were not presented to the BIA. We need not discuss any

subject on which Pavlov failed to exhaust his administrative remedies. His reply brief says that he did present these arguments to the Board but does not cite to any portion of the record that would support his assertion. This forfeits any opportunity to demonstrate that the exhaustion requirement has been satisfied.

The petition for review is denied.