In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2063

AFROUZ KEIRKHAVASH,

*Petitioner,*

*v.*

ERIC H. HOLDER, JR., Attorney General of the United States,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A078-642-170

ARGUED FEBRUARY 12, 2015 — DECIDED FEBRUARY 23, 2015

Before EASTERBROOK, KANNE, and HAMILTON, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Afrouz Keirkhavash, a citizen of Iran, did not depart when her tourist visa lapsed. Two days before the statutory deadline expired, she filed an application for asylum, contending that Iran would persecute her because, beginning in 1990, she had supported the Mojahedin-e Khalq (MEK), a group dedicated to the overthrow

of Iran's government. Her sworn statement detailed the steps she had taken to promote MEK's activities and goals. At a hearing before an immigration judge, Keirkhavash and her father testified under oath that as a supporter of MEK she had been expelled from college, denied employment, arrested, imprisoned, kicked and denied food while confined, and otherwise abused, leading her to flee the country in 1999. The IJ credited this testimony but denied the application for asylum because the State Department had classified MEK as a terrorist organization, which made Keirkhavash ineligible under 8 U.S.C. §1158(b)(2)(A)(v).

The Board of Immigration Appeals agreed with the IJ that Keirkhavash's support of MEK disqualified her from a grant of asylum but concluded that she remained eligible for relief under the Convention Against Torture (CAT), see 8 C.F.R. §1208.17, and the BIA remanded to the IJ for consideration of that possibility.

Before the IJ held a new hearing, however, Keirkhavash disavowed the contentions she had advanced in support of her request for asylum. With the assistance of a different lawyer, she maintained that some unknown person had forged her signature on her statement in support of the request for asylum—and that, although both she and her father had given oral testimony consistent with the written statement, they had done so only because her lawyer told them to lie. (She filed a charge with state ethics officials; her ex-lawyer responded that Keirkhavash is lying now in accusing him of counseling her to lie then. State officials found the dispute insoluble and closed the disciplinary proceeding.) Keirkhavash now sought both asylum and protection under the CAT on new grounds: First, she maintained that her

former husband had accused her of adultery, which could lead to her being stoned in Iran. (She obtained a divorce in the United States, but according to her father her ex-husband does not recognize the decree's validity.) Second, she contended that Iran would persecute her because of her statement that she had supported the MEK, despite the statement's withdrawal.

This time the IJ did not believe Keirkhavash. Observing that Keirkhavash has confessed to committing perjury, the IJ concluded that the new contentions were equally false. No documentary support or other corroboration was offered for either ground, beyond a statement from her father that her ex-husband knew about the divorce and would cause trouble for Keirkhavash should she return. But her father was as culpable for the bogus MEK story as Keirkhavash herself had been, and without his statement there was no basis for thinking that the ex-husband knew what had happened in the United States. As for the second ground (that Iran persecutes people who it thinks have abetted the MEK, even if they haven't): The IJ observed that the record does not show what, if anything, Iran knows about Keirkhavash's initial testimony. The IJ also thought the record devoid of evidence that Iran regularly (or ever) treats as true claims of support for MEK that are repudiated or otherwise shown to be false. And the request for withholding of removal under the Convention Against Torture fared no better, for it too depended on a conclusion that Keirkhavash was at last telling things honestly.

Keirkhavash appealed to the BIA for a second time, and it affirmed. After she filed a petition for judicial review, the Department of Justice consented to a remand so that the

Board could explain its thinking more fully. The Board then wrote a supplemental opinion explaining why it thought the IJ's credibility finding supported by the record. The case is now before us for decision on the merits.

We find the IJ's decision supported by substantial evidence. The IJ gave a powerful reason for disbelieving Keirkhavash and her father: both are confessed liars who offered no documentary evidence or other corroboration for the revised asylum request. The request depends *entirely* on the testimony of two people who have admitted committing perjury in order to obtain immigration benefits for Keirkhavash. A person avowedly willing to put self-interest ahead of the legal obligation to tell the truth has no entitlement to be believed when he changes stories after the first implodes. See, e.g., *Pavlov v. Holder*, 697 F.3d 616, 619 (7th Cir. 2012); *Alsagladi v. Gonzales*, 450 F.3d 700 (7th Cir. 2006).

Keirkhavash observes that an alien's (or witness's) established lies do not require an IJ to disbelieve a revised story. Someone whose deceit is uncovered may decide at last to tell the truth. The formal penalty for perjury during an immigration proceeding is a criminal conviction, not a loss of *all* opportunities under the immigration laws. A frivolous application for asylum blocks many immigration benefits, 8 U.S.C. §1158(d)(6)—and an application containing material, knowingly false statements is frivolous. See *Albu v. Holder*, 761 F.3d 817 (7th Cir. 2014); *Pavlov*, 697 F.3d at 617–18. But it does not foreclose a request for relief under the CAT. 8 C.F.R. §1208.20.

This means that the immigration judge had a choice: to believe the new story, or not, depending on its plausibility and context. The IJ did not exceed his authority in deciding

to disbelieve Keirkhavash's new contentions, which not only were uncorroborated but also came with an apparent new dollop of deceit. Recall that, as part of her new application, Keirkhavash "explained" her written statement as having been composed and signed by someone else, even though at the first hearing she had sworn to its truthfulness. This attempt to disown the application for asylum may have been designed to avoid disqualification under §1158(d)(6), but it is hard to believe that Keirkhavash knew nothing about the written application that she parroted in the hearing. The new, deceitful effort to avoid the effects of her own written statement itself supports a decision by the IJ that Keirkhavash had not mended her mendacious ways.

We reject any argument that an alien can obtain asylum or relief under the CAT by the very act of lying. That would provide a much too convenient route for self-help grants of entitlements to remain in the United States. All an alien would have to do is tell a whopper of a story, accusing a foreign nation of atrocities: If believed, that would produce asylum, and if disbelieved it would produce asylum just because of that nation's dislike of people who accuse it falsely of misconduct (or whose statements lead the foreign nation to suspect that they may be true, and to act on that basis). Keirkhavash has not cited any decision allowing such a circular process; we could not find one and will not be the first.

After Keirkhavash filed her initial application for asylum, the MEK disavowed resort to violence. In September 2012 it was removed from the State Department's list of terrorist organizations. If Keirkhavash had stuck to her original story (which the IJ believed), she might have received asylum. We cannot exclude the possibility that her first story was true

and her recantation (and second asylum application) false. But whichever story—if either—is the truth, Keirkhavash's confessed willingness to say whatever is necessary to obtain an immigration benefit has redounded to her detriment. The IJ and BIA have the support of substantial evidence in choosing to accept her recantation but disbelieve the replacement story, so the petition for review is

DENIED.