# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 10-3244

ZAKARIA BULLEN WANI SITE,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A079-816-708

ARGUED JUNE 9, 2011—DECIDED AUGUST 26, 2011

Before MANION, WOOD, and HAMILTON, *Circuit Judges.*

WOOD, *Circuit Judge.* South Sudan declared its independence from Sudan on July 9, 2011, making it the world's newest nation. President Barack Obama formally recognized the new Republic of South Sudan on the same day. See http://www.whitehouse.gov/the-press-office/2011/07/09/statement-president-barack-obama-recognition-republic-south-sudan. This was exactly one month after we heard oral arguments in Zakaria Bullen

Wani Site's petition, in which he contends that the Board of Immigration Appeals (the Board or BIA) erroneously denied his application for deferral of removal to Sudan under the Convention Against Torture (CAT). We point this out because Wani Site's hometown, Juba, is now the capital of South Sudan, and so the geopolitical circumstances framing his petition have changed fundamentally. Aside from that, Wani Site identifies three legal errors in the opinion of the Immigration Judge (IJ) rejecting his claim; the Board, he argues, either repeated or ignored those errors when he appealed to it. These errors, in his view, led the IJ and the Board mistakenly to conclude that he was not likely to be tortured if removed to (old) Sudan, and thus he was not entitled to relief under the Torture Convention. The government does not dispute that the agency's analysis is riddled with legal errors. Instead it contends that we have no jurisdiction to review the Board's conclusion that Wani Site is unlikely to be tortured in Sudan. The government also avers that it no longer plans to remove Wani Site to Sudan anyway, and so we should dismiss this case as moot. In light of the three undisputed legal errors in the Board's analysis, the government's contention that it does not intend to remove Wani Site to Sudan, and the changed circumstances there, we grant the petition for review and remand for further proceedings.

**I**

Sudan has a long history of violence and instability, arising in large part from racial and religious conflicts.

Civil war has raged intermittently since Sudan gained its independence from Egypt and Great Britain in 1956. In 1972, a peace treaty quelled the violence by granting regional autonomy to roughly what is now South Sudan. But civil war erupted again in 1983, when the government based in the North revoked the South's autonomy and imposed Shari'a law on the entire country. Violence and human rights abuses, most prominently the genocide in Darfur, regrettably have been a part of the status quo. See *Niam v. Ashcroft*, 354 F.3d 652, 656 (7th Cir. 2004) (discussing "Sudan's terrible human rights record").

Wani Site is from Juba, which as we noted is the new capital of South Sudan. He and his family are practicing Christians, which made them a minority in their homeland. (Christians are not only a minority in the former Sudan as a whole; according to the State Department, the Southern Sudanese practice mainly indigenous traditional beliefs, although Christian missionaries have converted some. See http://www.state.gov/r/pa/ei/bgn/5424.htm.) In 1989, Wani Site's father was arrested by the Sudanese Army for cooperating with the Sudan People's Liberation Movement (SPLM), a group that had long opposed the government. Wani Site never heard from his father again; he presumes that his father is dead. Following his father's disappearance, Wani Site's mother, entrusting her children to the care of their uncle, left the country to find work. Shortly thereafter, the army arrested his uncle based on suspected involvement with the SPLM. The uncle too was never heard from again. Wani Site and his siblings then went to live with another uncle,

yet the government continued to target them. In 1992, Wani Site's brother was arrested on suspicion of transmitting information on behalf of the SPLM while returning from Christian missionary work. The next year, members of the army raped one of his sisters.

To escape this incessant violence, the family moved from Juba to the capital in the North, Khartoum. While in public school there, the army targeted Wani Site for conscription. Shortly thereafter, he dropped out of school to avoid fighting for a military that, in his view, was killing his own people. In 1996, the army arrested and badly beat his surviving uncle for supporting the SPLM. At that point, the family, except for one sister, fled Sudan for Egypt. They lived there until 2001, when they were admitted to the United States as refugees. Wani Site became a lawful permanent resident in 2007, at the age of 29.

With those horrors behind him, a new chapter of troubles began in 2008. That year, Wani Site was convicted of aggravated criminal sexual abuse under Illinois law. This led the Department of Homeland Security (DHS) to serve him with a Notice to Appear charging that he was removable on various grounds because of that conviction. He conceded removability, lost all of his claims for relief before the IJ and the Board, and now appeals solely the denial of deferral of removal under the CAT. See 8 C.F.R. § 1208.17. His argument is that the Sudanese government will detain and torture him upon arrival in Khartoum because he is a failed asylum seeker and fled Sudan in part to

evade the draft. The IJ found that Wani Site credibly described the events we have set forth above at his removal hearing. His sister also testified at the hearing, and the IJ similarly found her credible. After concluding that there was plenty of evidence of past persecution, the IJ nevertheless denied Wani Site's claim for deferral of removal because he failed to prove that it was more likely than not that he would be tortured if returned to Sudan. See 8 C.F.R. § 1208.16(c). Wani Site appealed to the Board, which supplemented and affirmed the IJ's analysis, issuing a final order of removal to Sudan on August 27, 2010. He now petitions for review before our court.

## II

The government's position in this case simplifies the task before us. Much of the government's brief is devoted to arguing that 8 U.S.C. § 1252(a)(2)(C) strips our jurisdiction to review the Board's denial of Wani Site's request for deferral of removal under the CAT. But this is not a case that requires us to revisit *Issaq v. Holder*, 617 F.3d 962, 970 (7th Cir. 2010), which held that the jurisdiction-stripping provision has no force for deferral of removal claims arising under the CAT. We can resolve this case without wading anew into the jurisdictional tangle for two independent reasons. First, the government concedes that we have jurisdiction to review legal errors, but it offers nothing to rebut Wani Site's argument that the Board's decision is premised on three such errors. See 8 U.S.C. § 1252(a)(2)(D) (securing

jurisdiction to review legal questions). The government's silence on these issues operates as a forfeiture, see *Cincinnati Ins. Co. v. Eastern Atlantic Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001), which means that Wani Site prevails on the merits. Second, the independence of South Sudan combined with the government's representation to this court that it has no intention of removing Wani Site to Sudan persuades us that the Board needs to take another look at this matter in light of the profoundly changed political situation. See *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002). (This is not a case in which the government is simply refraining from carrying out an otherwise unobjectionable order, as in *Jama v. Immigration and Customs Enforcement*, 543 U.S. 335 (2005); here, the government itself has effectively disavowed the existing order.)

Although Wani Site prevails because of the government's forfeiture, we briefly explain in the interest of simplifying the proceedings on remand why Wani Site is correct that the Board committed legal error. The first legal error Wani Site identifies is the Board's reliance on the fact that his sister, who was not permitted to flee Sudan with the rest of the family, has not been tortured since his departure. This fact, in the Board's view, supports its conclusion that Wani Site is also unlikely to be tortured upon return. But their two cases are entirely different. Wani Site's claim is based on his status as a draft evader and a failed asylum seeker. It makes no sense for the Board to focus on his sister, since she does not share the characteristics that Wani Site believes will make him vulnerable to torture at the

hands of the government. See *Niam*, 354 F.3d at 655 (rejecting identical analysis in asylum case); *Kourski v. Ashcroft*, 355 F.3d 1038, 1039 (7th Cir. 2004) (criticizing Board and IJ for a "gaping hole" in its reasoning). In other words, he is not basing his argument on his family status, nor was his sister involved in any of his actions.

Wani Site also complains that the Board's conclusion that he must have personal knowledge that he will be tortured to support his application for deferral of removal is erroneous. We have previously held that the Board cannot require a person seeking relief to articulate, with personal knowledge, how he knows he will be tortured. See *Bosede v. Mukasey*, 512 F.3d 946, 959 (7th Cir. 2008) ("We are confused as to what kind of further proof the IJ expected. Short of presenting himself to Nigerian authorities and waiting to see their reaction, we do not fathom how, at this juncture, Bosede could do more than take at face value" evidence showing that persons in his position are likely to be tortured.). The Board cannot require this sort of testimony from people seeking relief, for it is impossible to provide.

Finally, Wani Site points to the Board's failure to consider evidence that he submitted showing that the Sudanese government persecutes repatriated nationals. The Board recognized that the IJ failed to consider this information, but it thought that the error was harmless because the overlooked reports focus on people from Darfur, while Wani Site is from Juba. True, the first report in question, published by the United Nations

Human Rights Commission on Refugees (UNHCR), is entitled "Position on Sudanese Asylum-Seekers From Darfur." But the Board has either misunderstood the report, or it failed to read beyond the title. The report discusses more than the plight faced by those in Darfur. This excerpt from page one illustrates our point:

> Forced returns to Sudan entail risks for certain categories of Sudanese, *regardless of their place of origin*, including Darfurians. These categories include young men of fighting age who are regularly singled out for detention and interrogation. These arrests are often pursuant to an administrative decree dated 28 February 1993, which authorized border authorities to arrest returning Sudanese who left after the June 1989 coup and have stayed away for more than a year.

UN High Commissioner for Refugees, UNHCR's Position on Sudanese Asylum-Seekers From Darfur, February 10, 2006, *available at* http://www.unhcr.org/refworld/docid/43f5dea84.html (last visited Aug. 10, 2011) (emphasis added). Plainly, the Board missed the relevance of this report to Wani Site's case. The second report, contrary to the Board's conclusion, has nothing to do with Darfur. Rather, it supports Wani Site's contention that military service in Sudan is mandatory and that Christian draft evaders from the south are tracked down and punished by the government—and not just punished in the ordinary sense, but subjected to measures that qualify as torture. *Cf. Dobrican v. INS,* 77 F.3d 164, 168 (7th Cir. 1996) (no basis for asylum where military would

punish equally all who fail to obey orders). The Board's rejection of Wani Site's application for deferral of removal based on a misunderstanding of the evidence is no better than a rejection that takes no account of important evidence in the first instance. See *Joshi v. Ashcroft*, 389 F.3d 732, 736-37 (7th Cir. 2004) ("A decision that resolves a critical factual question without mention of the principal evidence cannot be considered adequately reasoned."). Even if the government had not forfeited its opportunity to defend these arguments on the merits, these errors would have warranted a remand to the Board for reconsideration.

What perplexes us about this case is why the government itself did not move to remand to the Board once it decided not to remove Wani Site to Sudan. It chose instead to ask us to find that the petition is moot solely because of counsel's statement that Wani Site will not be removed to Sudan. We decline the invitation. As long as there is an outstanding removal order (which as we understand the facts, there is) and this court retains power to grant relief, the appeal is not moot. *Cf. Qureshi v. Gonzales*, 442 F.3d 985, 988 (7th Cir. 2006) (observing that a petition for review is moot only when "we are unable to grant relief affecting the legal rights of the parties") (internal quotation marks and citation omitted).

The government also asserted at oral argument that once South Sudan declared its independence, it may remove him to that country. We recognize that the government retains broad discretion to designate a country

of removal for Wani Site. See 8 U.S.C. § 1231(b). But it must exercise that authority in the appropriate way, not for the first time in the middle of a petition for review. We are in no position to comment on a plan to remove Wani Site to the new nation of South Sudan before the Board has considered the issue. See *Orlando Ventura*, 537 U.S. at 16 ("[W]e find that the well-established principles of administrative law [] require the Court of Appeals to remand the 'changed circumstances' question to the BIA."). Finally, we point out that the relief Wani Site seeks—deferral of removal under the CAT—is by definition temporary and country-specific. See 8 C.F.R. § 1208.16(f) ("Nothing in this section . . . shall prevent the Service from removing an alien to a third country other than the country to which removal has been withheld or deferred."). This means that even if Wani Site had prevailed below, the government still could have initiated proceedings to remove him to a country other than Sudan, presumably including South Sudan once diplomatic relations were established. But for reasons that we do not understand, the government has opted to attempt to win the right to remove Wani Site to Sudan, rather than officially to abandon its position before the Board—and this while assuring us that it has no plans to remove him to Sudan anyway. For the reasons we have set forth above, we GRANT the petition for review and we REMAND for further proceedings.