NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 3, 2015
Decided March 11, 2015

**Before**

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 14-1799

| | |
|---|---|
| STEPHEN AZIA TENENG, | Petition for Review of an Order of the |
| *Petitioner*, | Board of Immigration Appeals. |
| | |
| *v.* | No. A028 407 973 |
| | |
| ERIC H. HOLDER, JR., | |
| Attorney General of the United States, | |
| *Respondent*. | |

**O R D E R**

Stephen Teneng—a 52-year old citizen of Cameroon who was ordered removed from the United States as an alien convicted of an aggravated felony—petitions for review of an order of the Board of Immigration Appeals upholding the immigration judge's denial of a continuance, withholding of removal, and relief under the Convention Against Torture. We note at the outset that this is a procedurally complicated case, involving events from nearly 30 years ago, when Teneng entered the United States. In the decade after he came to the country, Teneng committed several state crimes involving fraud and was found removable as an aggravated felon in 1999. He was allowed to remain in the United States, however, because the immigration judge granted him withholding of removal based on fears of political persecution. Teneng

squandered this second chance by quickly resuming his criminal activities. He was convicted in 2003 of federal crimes involving fraud, and the government reopened removal proceedings. This time the IJ ordered Teneng removed from the country, concluding that (1) he was ineligible for withholding under either the immigration statute or the Convention Against Torture because he had been convicted of a "particularly serious crime," 8 U.S.C. § 1231(b)(3)(B)(ii), and (2) he was ineligible for deferral under the CAT because his history of crimes involving deceit undermined his testimony and documentary evidence. The Board upheld the IJ's decisions. Teneng petitions for review, but we conclude that we have jurisdiction only over his challenge to the denial of deferral under the CAT. We deny this part of the petition, however, because the agency properly concluded that Teneng failed to meet his burden of proof.

Teneng entered the United States on a student visa in 1986, when he was 23 years old. The following year, while living in Boston, he sought to adjust his status through his first wife, who was a permanent resident. Teneng was unable to obtain permanent residency, however, because no visa numbers were available (there is a limited number of visas for aliens seeking adjustment of status through a spouse who is a lawful permanent resident). He eventually abandoned his attempt to obtain permanent status through that marriage, divorced his first wife in 1997, and then married a U.S. citizen in 1998.[1]

In the decade or so following his initial attempt to adjust status, Teneng was convicted of multiple state crimes in Massachusetts, including larceny, forgery, and several counts of credit-card fraud. The immigration authorities learned of these convictions and sent him a Notice to Appear in 1998, charging that his 1997 conviction for forgery made him removable under 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien who had been convicted of an aggravated felony. *See id.* § 1101(a)(43)(R) (defining an aggravated felony as "any offense relating to . . . forgery . . . for which the term of imprisonment is at least one year").

---

[1] Teneng's immigration status after 1987 is unclear. In that year an immigration officer stamped his student visa "cancelled," apparently "in anticipation of approving the adjustment of status" based on his marriage. Despite the stamp, Teneng says he was assured by immigration authorities that his student visa would remain valid for as long as he continued to attend school. Assuming that Teneng's student visa *was* valid for as long as he attended school, the visa would have expired, at the latest, when he completed his studies in 1995.

At his removal hearing in 1999, Teneng conceded that he was removable as an aggravated felon but sought withholding of removal based on a fear of persecution for his political opinion if he returned to Cameroon. Teneng testified that he had not been politically active while growing up in Cameroon but feared he would be killed if returned because, since arriving in the United States, he had been advocating for greater democracy in Cameroon through his involvement in the Cameroon Students' Association and the Social Democratic Front, an opposition political party.[2] (Cameroon, though nominally a republic, is rife with corruption and has been ruled by President Paul Biya since 1982. Human-rights groups have accused the government of mistreating and even torturing marginalized persons, including political activists.) He said that the Cameroonian government arrested, tortured, and killed supporters of the Social Democratic Front, and that several members of his family, including his father, were harmed because of their involvement with the party. His own activism, Teneng testified, led the Cameroonian government to label him a "terrorist" and a "troublemaker" in government records, and he feared he would be arrested, detained indefinitely, and possibly killed if he were returned to Cameroon.[3]

In an oral decision, the IJ (from the immigration court in Louisiana) granted Teneng's application for both statutory withholding of removal, *see* 8 U.S.C. § 1231(b)(3)(A), and withholding under the Convention Against Torture, *see* 8 C.F.R. §§ 1208.16(c), 1208.18, finding that Teneng's evidence established that he "more likely than not [would] be persecuted and tortured if he return[ed] to Cameroon." The IJ

---

[2] Teneng testified that his political activities in the United States included, among other things, serving as president of the New England chapter of the Cameroon Students' Association, participating in organized protests against the Cameroonian government and its president, and writing and mailing petitions to the Cameroonian government and human rights organizations.

[3] In his application for withholding, Teneng sought to introduce evidence showing the dangers faced by the regime's political opponents. In support, he submitted numerous documents, including affidavits and letters from family members and fellow activists describing the dangers (including arrests and beatings by police); a "trouble makers" list purportedly compiled by the Cameroonian government and bearing Teneng's name; and reports by the U.S. State Department from 1997 and 1998 describing human rights abuses in Cameroon. The 1998 report described the government's human-rights record as "generally poor" and recounted extrajudicial killings and other abuses by the government's security forces, but noted that the government had begun "to prosecute some of the most egregious offenders."

opined that he found it "repulsive" to grant withholding to a "recidivist" like Teneng but that he could not do otherwise given the mandatory nature of withholding of removal under both the statute and the CAT once the alien has met his burden of proof.

In 2002 Teneng moved to Bolingbrook, Illinois, and quickly resumed his criminal activities. In 2003 he pleaded guilty in federal court to committing three felonies: (1) making false statements in a passport application, 18 U.S.C. § 1542; (2) fraudulently using an access device (i.e., a credit card), *id.* § 1029(a)(2), (e); and (3) knowingly possessing five or more identification documents with an intent to use them, *id.* § 1028(a)(3). In the plea agreement, Teneng admitted that he had used the stolen personal information of a mentally disabled adult to apply for a passport, to fraudulently obtain credit cards and documents (such as an Illinois driver's license) in the victim's name, and to buy merchandise. Teneng also admitted in the agreement that—while working as a supervisor at a group home for the mentally disabled in Massachusetts—he met the victim and that he used his position at the home to surreptitiously obtain the victim's birth certificate and Social Security number. Teneng was sentenced to 75 months' imprisonment and ordered to pay restitution.

After Teneng's release from prison in 2008, the Department of Homeland Security moved to reopen removal proceedings in order to terminate the 1999 grant of withholding based on his commission of a "particularly serious crime." *See* 8 U.S.C. § 1231(b)(3)(B); 8 C.F.R. §§ 1208.24(f), 1003.23(b)(1). A grant of either statutory or CAT withholding may be terminated if the government establishes that "[t]he alien has committed any . . . act that would have been grounds for denial of withholding of removal under [8 U.S.C. § 1231(b)(3)(B)] had it occurred prior to the grant of withholding." 8 C.F.R. § 1208.24(b)(3). The referenced statute provides that an alien is ineligible for withholding "if the alien, having been convicted of a particularly serious crime is a danger to the community of the United States." 8 U.S.C. § 1231(b)(3)(B)(ii); *see also* 8 C.F.R. § 1208.16(d)(2) (stating that applicants falling within § 1231(b)(3)(B) are also ineligible for withholding of removal under CAT). Here, the government contended that the Attorney General had the discretion to assess two of the crimes of which Teneng was convicted in 2008—making false statements in a passport application and fraudulently using an access device—as particularly serious because of their nature, the sentence imposed, and the circumstances of the conviction. *See* 8 U.S.C. § 1231(b)(3)(B); *Ali v. Achim*, 468 F.3d 462, 469 (7th Cir. 2006); *In Re N-A-M-*, 24 I. & N. Dec. 336, 342 (BIA 2007). An alien who is ineligible for withholding because of having committed a particularly serious crime remains eligible, however, for *deferral* of removal

under the CAT, *see* 8 C.F.R. § 1208.17(a), which is a "more temporary form of protection" than withholding, *Wanjiru v. Holder*, 705 F.3d 258, 264 (7th Cir. 2013).

The immigration court granted the government's motion to reopen in April 2009,[4] and Teneng applied again for both statutory withholding and relief under the CAT, submitting new documentary evidence in support of his application—including, among other things, new affidavits from friends and family, and recent country-condition reports from the U.S. State Department. His *third* wife—a U.S. citizen whom he married in late 2010, four months after his case was reopened—also submitted a Petition for Alien Relative form (called a Form I-130) to U.S. Citizenship and Immigration Services on his behalf, which, if approved, would allow Teneng to file for adjustment of status based on the marriage. *See Yang v. Holder*, 760 F.3d 660, 662 (7th Cir. 2014); *Matter of Hashmi*, 24 I. & N. Dec. 785, 789 (BIA 2009).

At his removal hearing in late 2011, Teneng requested a continuance pending the adjudication of his I-130 based on his third marriage. DHS did not oppose the request for a continuance, stating that the proceedings should be continued because the government had sent some of the documents submitted by Teneng "to an overseas investigation" (presumably in an attempt to prove that the documents are inauthentic). The IJ denied the continuance, explaining that, because he was "not inclined to grant [Teneng's] application for permanent residence as a matter of discretion," there was no reason "to continue the case for adjudication of the I-130."

During his testimony at the hearing, Teneng sought to minimize the seriousness of his most recent crimes. He asserted that many of the facts underlying his 2003 convictions were inaccurately recounted in the plea agreement. Teneng stated, for example, that he had obtained false documents only so that he could return to Cameroon to visit his dying father. He also maintained that the victim was physically, not mentally, disabled and that Teneng had *bought*, not stolen the identification documents from him. As to his fear of persecution, Teneng testified that he believed he would be killed if he returned to Cameroon, even though he no longer remained politically active. He said that his father recently had been detained by the Cameroonian government and that his

---

[4] Once the case was reopened, the government filed an amendment to the 1998 Notice to Appear, adding new allegations and charges of removability. Because Teneng has conceded removability and does not seek to retract that concession in his petition for review, we do not discuss these new charges further.

brother, who had become a U.S. citizen, likewise had been harassed when he visited Cameroon in 2001 and 2006.

In a comprehensive 32-page decision, the IJ terminated withholding, denied Teneng's applications for withholding of removal and CAT relief, and ordered him removed to Cameroon. The IJ first explained his earlier denial of Teneng's motion for a continuance, stating that, although the court could consider a variety of factors in determining whether to continue, *see Hashmi*, 24 I. & N. Dec. at 790–94, a continuance pending adjudication of the I-130 was unwarranted because Teneng did "not merit adjustment of status as a matter of discretion." Although there were some positive factors weighing in favor of granting the continuance, these were outweighed by Teneng's "extensive and serious criminal history," and by his continuous attempts "to minimize the gravity of his crimes."

Next, the IJ concluded that Teneng was ineligible for withholding (under either the immigration statute or the CAT) because the nature, elements, and "underlying circumstances" of two of Teneng's crimes—specifically, making false statements in a passport application and fraudulently using an access device—established that he had been convicted of particularly serious crimes. In discussing the circumstances of the crimes, the IJ relied on the facts as set out in the plea agreement, explaining that, because Teneng had pleaded guilty to those facts, there was no reason to credit his testimony contradicting the facts in the plea agreement.

Finally, although Teneng's conviction for particularly serious crimes did not preclude deferral of removal under the CAT, the IJ determined that Teneng was ineligible for deferral because he had not met his burden of proving that he faced a clear probability of being tortured if returned to Cameroon. The denial of deferral rested principally on the IJ's finding that Teneng's testimony was not credible and lacked sufficient corroboration. Teneng was not credible, the IJ explained, because his 2003 convictions for crimes involving fraud showed that he was prone to deceiving others for personal gain. Teneng's lack of credibility was further demonstrated, the IJ added, by his attempts to minimize his crimes by disputing the facts he had admitted in the plea agreement. The IJ also was suspicious that Teneng, although submitting affidavits, had not called any witnesses—including his brother and mother, who lived in the United States—to testify, thus depriving the government of the ability to cross-examine them. The IJ acknowledged Teneng's documentary evidence of poor country conditions but concluded that these documents, though helpful to Teneng, were not enough to meet his burden of proof. The IJ gave little weight to the rest of the

documents—e.g., affidavits, letters, Cameroonian government documents—because DHS had "submitted evidence generally indicating fraudulent documentation from Cameroon is relatively common and easily obtained" and because Teneng had a history of lying and forgery. The Board upheld the IJ's ruling.

Teneng first contends that, in denying his motion for a continuance, the Board and the IJ denied him due process and misapplied the legal standard for granting a continuance by not considering all of the factors set forth in *Matter of Hashmi*, 24 I. & N. Dec. 785 (BIA 2009). He points, for example, to the Board's statement in *Hashmi* that the IJ should consider the lack of opposition by DHS when deciding whether to grant a continuance, *id.* at 791, and he maintains that the fact that, like him, DHS sought a continuance in this case "should have been weighed very heavily in the IJ's decision." The government maintains that this court lacks jurisdiction to consider this argument because Teneng is removable as an aggravated felon. *See* 8 U.S.C. § 1252(a)(2)(C); *Moral-Salazar v. Holder*, 708 F.3d 957, 962 (7th Cir. 2013). The government acknowledges that this court retains jurisdiction to review questions of law and constitutional claims, *see* 8 U.S.C. § 1252(a)(2)(D); *Cano-Oyarzabal v. Holder*, 774 F.3d 914, 915–16 (7th Cir. 2014), but contends that "Teneng fails to raise a colorable constitutional claim or legal issue with respect to the agency's denial of [his] request for a continuance."

We agree with the government that we lack jurisdiction to review the agency's denial of Teneng's request for a continuance because he is removable as an aggravated felon and his challenge to the denial of a continuance does not present legal or constitutional issues. Teneng's real objection is not to any error of law but to "the manner in which the agency weighed the various factors that inform the exercise of discretion." *Kiorkis v. Holder*, 634 F.3d 924, 928 (7th Cir. 2011) (quoting *Khan v. Filip*, 554 F.3d 681, 688 (7th Cir. 2009)) (internal quotation mark omitted); *see Lopez v. Holder*, 740 F.3d 207, 211 (1st Cir. 2014); *Hamilton v. Holder*, 680 F.3d 1024, 1027 (8th Cir. 2012). Teneng attempts to conjure a legal issue by citing the Board's decision in *Hashmi*, 24 I. & N. Dec. 785. But his repeated references to *Hashmi* do not confer jurisdiction upon this court: "Mere reference to a legal standard or a constitutional provision . . . does not convert a discretionary decision into a reviewable legal or constitutional question." *Moral-Salazar*, 708 F.3d at 962. Teneng's insistence that DHS's lack of opposition to his motion should have led the IJ to grant a continuance is unavailing, as *Hashmi* makes clear that the IJ's decision should be guided—as it was in this case—by "the apparent ultimate likelihood of success on the adjustment application." *Hashmi*, 24 I. & N. Dec. at 790. And Teneng's unsubstantiated contention that he was denied due process is "the

sort of flabby, unfocused argument" that this court has repeatedly concluded does *not* present a constitutional claim. *Portillo-Rendon v. Holder*, 662 F.3d 815, 817 (7th Cir. 2011).

Teneng next argues that the IJ and the Board wrongly concluded that his crimes were "particularly serious," disqualifying him from withholding of removal under either the immigration statute or the CAT. He maintains that this purported error resulted from the agency's "fail[ure] to consider [his] testimony regarding the crimes and the circumstances surrounding the crimes." But the immigration statute generally bars the court's review of the agency's determination that a crime is "particularly serious." *See* 8 U.S.C. § 1252(a)(2)(B)(ii), (a)(2)(C); *Issaq v. Holder*, 617 F.3d 962, 966–67 (7th Cir. 2010); *Petrov v. Gonzales*, 464 F.3d 800, 801–02 (7th Cir. 2006); *Ali*, 468 F.3d at 470. And here, too, Teneng fails to advance a claim of *legal* error to clear the jurisdictional bar. His assertion that the IJ and the Board didn't consider his testimony could be read as a claim that they ignored his evidence, which is a claim of legal error that we *do* have jurisdiction to review. *See Cruz-Moyaho v. Holder*, 703 F.3d 991, 997 (7th Cir. 2012); *Jawad v. Holder*, 686 F.3d 400, 403–04 (7th Cir. 2012). But we reject this attempt to manufacture a legal issue because the record reveals that the IJ thoroughly considered Teneng's testimony regarding the circumstances of his crimes but discredited it on grounds that his story contradicted the plea agreement and that his long history of crimes involving fraud and deceit rendered his testimony dubious. *See Jawad*, 686 F.3d at 404.

Finally, we turn to Teneng's challenge to the agency's determination that he is ineligible for deferral under the CAT. The government maintains that—as with the rest of Teneng's petition—we are jurisdictionally barred by § 1252(a)(2)(C) from considering his arguments regarding deferral. The government is incorrect. We rejected this identical argument in *Wani Site v. Holder*, 656 F.3d 590 (7th Cir. 2011). The government devoted much of its brief in that case "to arguing that 8 U.S.C. § 1252(a)(2)(C) strips our jurisdiction to review the Board's denial of [the petitioner's] request for deferral of removal under the CAT." *Wani Site*, 656 F.3d at 593. As we unequivocally told the government in that case, however, this "jurisdiction-stripping provision has no force for deferral of removal claims arising under the CAT." *Id.* (citing *Issaq*, 617 F.3d at 970); *see Moral-Salazar*, 708 F.3d at 962 (explaining that application of § 1252(a)(2)(C) jurisdictional bar in that case should not "be understood to preclude judicial review of a denial of the exceptional remedy of deferral of removal under the Convention Against Torture"); *Wanjiru v. Holder*, 705 F.3d 258, 264 (7th Cir. 2013) (stating that an order deferring removal under CAT is "final enough to permit judicial review, but at the same time not . . . the kind of 'final' order covered by § 1252(a)(2)(C)"). The government contends that the statements in our recent opinions addressing this issue are "dicta."

According to the government, we should rely instead on our decisions in *Petrov v. Gonzales*, 464 F.3d 800 (7th Cir. 2006), and *Hamid v. Gonzales*, 417 F.3d 642 (7th Cir. 2005)—decisions which, the government insists, establish that we lack jurisdiction to review the agency's denial of deferral under the CAT. But, as we explained in *Issaq*, "[n]o one argued in *Petrov* that the remedy of deferral of removal requires a distinct [jurisdictional] analysis, and so we cannot take *Petrov* as the last word on that point." *Issaq*, 617 F.3d at 970. The same is true of *Hamid*.

Although we *do* have jurisdiction to review Teneng's claim that the agency improperly denied him deferral under the CAT, we are not persuaded by his argument that the denial was in error. Teneng's only argument regarding deferral is that the IJ wrongly discredited his testimony based on his prior crimes. But it was reasonable for the IJ and the Board to conclude that Teneng's criminal convictions for crimes involving fraud undermined his credibility. *See Unuakhaulu v. Gonzales*, 416 F.3d 931, 938–39 (9th Cir. 2005). An alien who has previously lied "in order to get immigration benefits," we have explained, "can't be surprised when an immigration judge concludes that he has told new lies in an effort to avoid the consequences of the old lies." *Pavlov v. Holder*, 697 F.3d 616, 619 (7th Cir. 2012); *see* 8 U.S.C. § 1229a(c)(4)(C) (stating that "immigration judge may base a credibility determination [on various factors]" and consider "the totality of the circumstances"); *Boadi v. Holder*, 706 F.3d 854, 860 (7th Cir. 2013). Just like persons who have lied to obtain immigration benefits, Teneng's crimes reveal "a propensity to put self-interest ahead of his legal obligation to tell the truth." *Pavlov*, 697 F.3d at 619. And although the Federal Rules of Evidence don't apply in immigration proceedings, *Antia-Perea v. Holder*, 768 F.3d 647, 657 (7th Cir. 2014), the IJ's reasoning is consistent with the common-sense principle embodied in Rule 609, which allows a witness to be impeached by evidence of any crime that requires proof of a dishonest act or false statement. *See* FED. R. EVID. 609(a)(2).

Accordingly, we DENY the portion of Teneng's petition for review contesting the agency's determination that he is ineligible for deferral under the CAT. The remainder of his petition is DISMISSED for lack of jurisdiction.