# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-3268
_____

Emmanuel Deng Chol

*Petitioner*

v.

Merrick B. Garland, Attorney General of the United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: November 17, 2021
Filed: February 16, 2022
_____

Before BENTON, KELLY, and ERICKSON, Circuit Judges.
_____

BENTON, Circuit Judge.

Emmanuel Deng Chol—a citizen of South Sudan through his father—was born in a refugee camp in Uganda. At age five, he was admitted to the United States as a lawful permanent resident. Twelve years later, he was convicted of two counts of robbery and sentenced to 7 to 15 years. Deng Chol was charged with removability. *See* **8 U.S.C. § 1227(a)(2)(A)(iii)** (an alien convicted of an aggravated felony shall, upon the order of the Attorney General, be removed); **8 U.S.C. §**

**1101(a)(43)(G)** (a theft offense with at least a one-year term of imprisonment is an aggravated felony). Deng Chol applied for asylum and requested withholding of removal under the Convention Against Torture (CAT).

At his removal hearings, Deng Chol appeared pro se. The immigration judge (IJ) explained that he was ineligible for asylum due to his criminal record, but alerted him that he would be eligible for relief under the CAT if he could prove that it is more likely than not that he would be tortured by the government (or with its acquiescence) in South Sudan and Uganda. After testimony from Deng Chol, his mother, and a prison official, the IJ determined he was not entitled to CAT relief and ordered removal to South Sudan or Uganda. The Board of Immigration Appeals (BIA) dismissed his appeal, designating South Sudan as the country of removal with Uganda as an alternate.

Deng Chol challenges the factual determination that it is not more likely than not that he would be tortured in South Sudan and Uganda. He also argues that the IJ erred procedurally by failing to (1) fully develop the record about his tribal faction, (2) provide the State Department's country reports for South Sudan and Uganda, and (3) tell him the definition of "torture" under the CAT. Having jurisdiction under 8 U.S.C. § 1252(a)(4), this court denies the petition for review.

I.

Deng Chol challenges the IJ's factual finding that it is not more likely than not that he would be tortured in South Sudan and Uganda. While this court's jurisdiction over final orders of removal is typically limited to constitutional claims and questions of law, this court may review factual challenges to a CAT order. *Gilbertson v. Garland*, 7 F.4th 700, 704 (8th Cir. 2021), *citing **Nasrallah v. Barr***, 140 S. Ct. 1683, 1694 (2020). The standard of review is substantial evidence. ***Lasu v. Barr***, 970 F.3d 960, 964 (8th Cir. 2020), *citing **Nasrallah***, 140 S. Ct. at 1692. Under this "extremely deferential" standard, "this court will not reverse the agency's decision unless the petitioner demonstrates that the evidence was so compelling that

no reasonable fact finder could fail to find in favor of the petitioner." ***Cano v. Barr***, 956 F.3d 1034, 1038 (8th Cir. 2020).

"To qualify for relief under the CAT, an alien must show 'that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" ***Lasu***, 970 F.3d at 966, *quoting* **8 C.F.R. § 1208.16(c)(2)**. Torture is: "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by or at the instigation of or with the consent or acquiescence of a public official acting in an official capacity or other person acting in an official capacity." **8 C.F.R. § 208.18(a)(1)**. A government does not acquiesce in torture merely because it is powerless to stop it, but willful blindness "crosses the line." ***Mouawad v. Gonzales***, 485 F.3d 405, 413 (8th Cir. 2007). "In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, all evidence relevant to the possibility of future torture shall be considered, including, but not limited to: (i) Evidence of past torture inflicted upon the applicant; (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured; (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and (iv) Other relevant information regarding conditions in the country of removal." **8 C.F.R. § 1208.16(c)(3)**.

## A.

The IJ determined that it is not more likely than not that Deng Chol would be tortured in in South Sudan because he is (1) a member of the governing Dinka tribe, and (2) not a politician, journalist, or humanitarian worker.

## 1.

Deng Chol objects to the first reason, claiming the governing Dinka tribe includes "two warring factions." He suggests that, because it is unclear whether he

is a member of the minority or majority faction, it is possible that he would be tortured or killed *for* his Dinka heritage.

Two South Sudan CAT cases control this case. In *Jima v. Barr*, the IJ granted CAT relief to a member of the minority Mabaan tribe, based on a State Department country report describing widespread violence on ethnic lines, despite acknowledging "very little evidence in the record relating to the respondent's specific tribe." *In re Jima*, A 094 692 588, at 3 (BIA Dec. 17, 2018), *available at* **Add. to Petitioner's Brief**, *Jima v. Barr*, No. 19-1104, at 17 (Mar. 19, 2019). The BIA vacated, concluding that the IJ's decision was "based on a chain of assumptions stemming from South Sudan's general inter-ethnic violence" and that Jima's fears were "largely based on speculation." ***Jima v. Barr***, 942 F.3d 468, 473 (8th Cir. 2019). This court agreed:

> Under CAT, the existence of a consistent pattern of gross, flagrant, or mass violations of human rights in a particular country does not, as such, constitute a sufficient ground for determining that a particular person would be in danger of being subjected to torture upon his or her return to that country. Instead, the petitioner must show specific grounds exist that indicate the individual would be personally at risk. The BIA identified the IJ's clear error in Jima's case by showing that the IJ, rather than examining the likelihood of Jima's prospective torture, instead looked at the likelihood of a pattern of gross or mass violations of human rights in South Sudan. The IJ failed to clearly articulate a more personalized fear of torture specific to Jima.

*Id.* at 473 (citations and quotation marks omitted).

The second case is *Lasu v. Barr*. Like in *Jima*, Lasu requested relief based on membership in the minority Equatorial tribe. ***Lasu***, 970 F.3d at 967. Like in *Jima*, Lasu relied on a State Department country report describing "ethnically based targeted killings of civilians, extrajudicial killings, abuse, and mass forced displacement" in South Sudan. *Id.* at 969 (Kelly, J., dissenting). As in *Jima*, this court upheld the BIA order vacating CAT relief:

We conclude the BIA's decision is supported by substantial evidence because the BIA correctly concluded that Lasu must show more than a pattern of general ethnic violence in South Sudan to meet the CAT's likelihood requirement. Though the record reflects that ethnic violence is occurring in South Sudan, Lasu needed to demonstrate that he would more likely than not be tortured by South Sudanese authorities.

The fact that Lasu is a member of one of sixty ethnic minority tribes that "could be" tortured does not compel the conclusion that he is more likely than not to be tortured. Here, the BIA identified the IJ's error, showing that the IJ, rather than examining the likelihood that Lasu will face torture, instead looked at the likelihood that a member of any ethnic minority tribe in South Sudan will suffer from torture. *See Jima*, 942 F.3d at 473. Thus, the "IJ failed to clearly articulate a more personalized fear of torture specific to [Lasu]." *Id.*

*Id.* at 968 (citations and quotation marks omitted).

Like Jima and Lasu, Deng Chol failed to show a personalized fear of torture because he did not show that the specific faction to which he (possibly) belongs is the object of ethnically targeted violence. The only evidence about Dinkan infighting at the removal hearing was a statement by his mother: "Okay. Even with the Dinka tribe, they are split into two. One is Dinka, Bahr el Ghazal. One is the Bor. And they're fighting each other." This is not substantial evidence. It does not address the nature or intensity of the "fighting" between the two factions of Dinkas. "Fighting" could mean social tension or political opposition, rather than torture. This evidence is not so compelling that no reasonable fact finder could fail to find in favor of Deng Chol.

Deng Chol claims that his mother's testimony is corroborated by the State Department's 2019 country report for South Sudan. However, that report does not mention any intra-tribal conflict among the Dinkas. While the country report has considerable evidence of general "ethnically targeted violence," that is exactly what

did not meet the CAT's likelihood requirement in *Jima* and *Lasu*. **Jima**, 942 F.3d at 473; **Lasu**, 970 F.3d at 968.

2.

In response to the IJ's second reason, Deng Chol argues that internally displaced persons (IDPs) face similar levels of torture as politicians, journalists, and humanitarian workers. He cites the country report for South Sudan, and *Wani Site v. Holder*, 656 F.3d 590 (7th Cir. 2011).

This evidence falls short of the "extremely deferential" substantial evidence standard. First, the country report states, in full: "IDPs *remained in UNMISS PoC sites due to* fear of retaliatory or ethnically targeted violence by armed groups, *both government- and opposition-affiliated*." **U.S. Dep't. of State, South Sudan 2019 Human Rights Report**, at 20, https://www.state.gov/reports/ 2019-country-reports-on-human-rights-practices/south-sudan/ (last visited Feb. 11, 2022) (emphasis added). Rather than proving a more-likely-than-not probability of torture, this statement indicates that IDPs can avoid violence by relocating to the UN's "protection of civilian" sites. *See* **8 C.F.R. § 1208.16(c)(3)** ("In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, all evidence relevant to the possibility of future torture shall be considered, including . . . (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured."). This statement also indicates that some groups committing violence against IDPs are enemies of the government, not "acting in an official capacity." *See* **8 C.F.R. § 208.18(a)(1)**; *Mouawad*, 485 F.3d at 414 (acts of violence by Hizballah not CAT torture without acquiescence of Lebanese government); *Cambara-Cambara v. Lynch*, 837 F.3d 822, 827 (8th Cir. 2016) (acts of violence by Guatemalan gangs not CAT torture without acquiescence of Guatemalan government).

Finally, while the country report specifies government-sponsored "torture" of politicians, journalists, and humanitarian workers, it mentions only "violence"

-6-

against IDPs.  *See **Zelaya-Moreno v. Wilkinson***, 989 F.3d 190, 204 (2d Cir. 2021) ("Whether prior acts of violence rise to the level of torture depends on the interplay between many factors, including severity, duration, effects, and means of carrying them out.").  To find Deng Chol likely to be tortured, a fact finder would have to assume (1) that Deng Chol—an "Americanized" person with no family in South Sudan, unfamiliar with its culture, who cannot speak the native language—would become an IDP; (2) that he would be removed without access to UN protection of civilian sites; (3) that violence would be inflicted on him by government-affiliated groups, not opposition groups; and (4) that the "violence" would be of a severity and duration that rises to the level of CAT "torture."  "[T]his string of assumptions, although plausible, is nothing more than a chain of hypothetical inferences and does not demonstrate a clear likelihood of torture."  *Jima*, 942 F.3d at 474.

As for *Wani Site*, the petitioner there faced removal to *Sudan*, not South Sudan.  *Wani Site*, 656 F.3d at 591.  It was also decided over a decade ago, just after South Sudan declared independence.  *Id.*  The IJ here observed that large-scale conflict in the region has since decreased.  The Seventh Circuit's *Wani Site* case does not show that men forced to return to South Sudan today are regularly subjected to torture.

Neither does *Wani Site* stand for the proposition that conscription amounts to CAT torture.  In *Wani Site*, the IJ and the BIA erred by not considering a UN report showing that "military service in Sudan [was] mandatory and that Christian draft evaders from the south [were] tracked down and punished by the government."  *Id.* at 594.  That evidence was relevant because the petitioner claimed he fled the country "in part to evade the draft."  *Id.* at 592.  Here, Deng Chol's mother testified that she believes he would be conscripted into the military if removed to South Sudan.  But conscription itself does not qualify as CAT torture unless done with the intent of inflicting pain and suffering on the conscript.  *See **Cherichel v. Holder***, 591 F.3d 1002, 1013 (8th Cir. 2010) ("[A] petitioner may not obtain relief under the CAT unless he can show that his prospective torturer has the goal or intent of inflicting severe physical or mental pain or suffering upon him.").  This intent element is not

satisfied by showing that severe pain and suffering is the foreseeable consequence of military conscription. *Id.* at 1015. Deng Chol has not provided substantial evidence that he would be conscripted by the South Sudanese military, or that the South Sudanese government uses conscription to inflict pain and suffering. *See Herrera v. Holder*, 437 F. Appx. 30, 31 (2d Cir. 2011) (Guatemalan military's attempt to forcibly recruit petitioner did not establish likelihood of torture).

The evidence that Deng Chol would face a "personalized risk" of torture in South Sudan is not substantial.

B.

Deng Chol argues that it is more likely than not that he would be tortured in Uganda because he would be detained in a Ugandan prison, where prisoners are likely to be tortured. The IJ agreed that torture occurs in Ugandan prisons, citing the State Department's 2019 country report for Uganda. However, the IJ concluded it was "too speculative to see that [Deng Chol] would ever be charged with a crime in Uganda" and be confined to prison.

Deng Chol counters that persons removed to Uganda because of crimes committed in the United States are imprisoned as a matter of course. His only authority is a Third Circuit case, *Zubeda v. Ashcroft*, 333 F.3d 463 (3d Cir. 2003). There, the IJ believed that the petitioner would be detained upon arrival in the Congo because "[v]irtually every government detains its citizens for some period of time after that citizen is deported or forcibly removed from another country." *Zubeda*, 333 F.3d at 478. The BIA reversed, citing "a dearth of evidence to support any finding that [Zubeda] is likely to be detained for any reason." *Id.* Because the record was "not clear as to how the Immigration Judge concluded that Zubeda would likely be detained if deported," the Third Circuit remanded for "clarification of the record and an opportunity for any additional fact finding or evidence that may be necessary." *Id.* at 465, 479. *Zubeda* does not hold that persons removed from the United States for their crimes are subject to detention in the Congo, let alone Uganda.

Deng Chol has not presented substantial evidence he would be tortured if removed to Uganda.

## II.

Deng Chol argues that the IJ committed procedural errors, including failing to fully develop the record about his tribal faction, failing to provide the State Department's country reports for South Sudan and Uganda, and failing to tell him the definition of "torture" under the CAT. This court reviews these due process challenges de novo. *United States v. Yan Naing*, 820 F.3d 1006, 1010 (8th Cir. 2016). "To demonstrate a violation of due process, an alien must demonstrate both a fundamental procedural error and that the error resulted in prejudice." *Al Khouri v. Ashcroft*, 362 F.3d 461, 466 (8th Cir. 2004).

Deng Chol claims that the IJ committed a fundamental procedural error by concluding that "as a Dinka . . . he would potentially and probably have government protection" without exploring whether his father was a member of the majority or minority faction of the Dinka tribe. The Fifth Amendment's guarantee of due process of law applies to deportation proceedings, and aliens are entitled to "fundamentally fair" removal hearings. *Id.* at 464, *citing* *Reno v. Flores*, 507 U.S. 292, 306 (1993).

> [W]hen an alien appears pro se, it is the IJ's duty to fully develop the record. Because aliens appearing pro se often lack the legal knowledge to navigate their way successfully through the morass of immigration law, and because their failure to do so successfully might result in their expulsion from this country, it is critical that the IJ scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.

*Id.* at 464-65 (citations and quotation marks omitted). But, equally, the IJ has no "duty to act as [the petitioner's] advocate or lawyer." *Id.* at 465. "And indeed, we

recognize the IJ's authority to conduct proceedings, including the questioning of witnesses, in an efficient and orderly manner." *Id.*, *citing* **8 U.S.C. § 1229a(b)(1)**.

Deng Chol likens his case to *Al Khouri*. The hearing here is not like the hearing there, where the IJ "curtail[ed] Mr. Al Khouri's testimony and circumscribe[d] his ability to elaborate on the details of his claim by instructing him only to answer the questions asked and then conclud[ed] that Mr. Al Khouri's limited responses undermined his credibility[.]" *Id.* (alterations added). Here, the IJ allowed Deng Chol free rein to present testimony. The IJ affirmatively asked Deng Chol about his tribal affiliation. Deng Chol testified, "Well, in my, in my culture, you, you're supposed to go with what your dad was, so I would consider myself Dinkan." *See* ***Ramirez v. Sessions***, 902 F.3d 764, 772 (8th Cir. 2018) (distinguishing *Al Khouri* by noting that "the IJ did not curtail Ramirez's testimony or prevent her from telling her whole story" and "gave her repeated opportunities to expound on her claim").

Regardless, this argument fails for lack of prejudice. "To establish prejudice, [a petitioner] 'must show the outcome of the proceeding may well have been different had there not been any procedural irregularities.'" *Id.* (alteration added), *quoting* ***Tun v. Gonzales***, 485 F.3d 1014, 1026 (8th Cir. 2007). Deng Chol has not shown that the IJ's failure to ask additional questions about his tribal faction affected the outcome of his proceeding for two reasons.

First, there is no prejudice if the petitioner fails to explain the evidence he or she might have offered if the IJ asked further questions. *Id.* While Deng Chol complains that the IJ "failed to make sufficient probing questions," he has not identified new evidence that further questioning might have discovered. Instead, Deng Chol acknowledges "nothing on the record" shows "whether or not the Petitioner's estranged father was a member of the majority or minority Dinka tribe." Most importantly, on appeal, Deng Chol says that "it is unclear whether the Petitioner would be considered a member of the minority or majority faction." *See id.* ("Even on appeal, Ramirez has failed to explain the evidence she might have

-10-

offered had the IJ asked further questions . . . . Her due process claim necessarily fails.").

Second, there is no prejudice because CAT relief would have been inappropriate even if Deng Chol is a minority Dinka. As discussed, none of the evidence before the IJ—and none identified by Deng Chol on appeal—shows that minority Dinkas are tortured by the South Sudanese government. Without such evidence, the IJ could not have found a likelihood of torture based on his faction without running afoul of *Jima* and *Lasu*. Again, Deng Chol has not established prejudice.

Deng Chol's next argument—that the IJ erred by failing to provide the State Department's country reports—fails for lack of jurisdiction. True, country reports developed by the State Department are "accorded special weight in removal proceedings." ***Aguilar-Ramos v. Holder***, 594 F.3d 701, 705 n.6 (9th Cir. 2010). But this court may review a final order of removal only if "the alien has exhausted all administrative remedies available to the alien as of right." **8 U.S.C. § 1252(d)(1)**. To exhaust remedies, "an alien must present the same specific legal theory to the [Board] before he or she may advance it in court." ***Bakor v. Barr***, 958 F.3d 732, 739 (8th Cir. 2020). "A less demanding rule would frustrate the purpose of mandating exhaustion by allowing aliens to secure judicial review on legal theories that the agency had no cause to consider." ***Id.*** On appeal to the BIA, Deng Chol did not challenge the IJ's failure to provide the country reports. This court has no jurisdiction over Deng Chol's country-reports argument.

Finally, Deng Chol argues that the IJ should have recited the CAT's definition of "torture" to him. This argument also appears to fail for lack of jurisdiction— while Deng Chol alleged that the IJ applied an incorrect definition of torture in his appeal to the BIA, he did not specifically challenge the IJ's failure to tell him the definition of torture. Regardless, this argument fails for lack of prejudice because Deng Chol has not explained the evidence he might have offered if the IJ had provided a definition. *See* ***Ramirez***, 902 F.3d at 772. Deng Chol's conclusory

assertion—"If the Petitioner would have been given a proper definition of torture, he could have conformed his testimony to sufficiently articulate his fears of returning to either Uganda or South Sudan"—does not establish prejudice. *See **Ramirez v. Holder***, 489 F. Appx. 140, 142 (8th Cir. 2012) ("Ramirez offers only unsupported conclusory statements that, had the IJ questioned him further, he may well have testified to some additional unspecified facts which would entitle him to relief. Those unsupported conclusory statements are insufficient in this case to establish any prejudice . . . ."). Even if failing to recite the definition of "torture" were a fundamental procedural error, Deng Chol has not demonstrated prejudice.

Deng Chol has not shown prejudice from any fundamental procedural error.

\* \* \* \* \* \* \*

The petition for review is denied.

_____

-12-